## ATKINSON et al. v. STERN.

### No. 5435.

Court of Appeal of Louisiana. Second Circuit.

April 30, 1937.

Rehearing Denied June 1, 1937.

Writ of Certiorari and Review Denied June 21, 1937.

J. Norman Coon, of Monroe, for appellants.

Geo. Wesley Smith, of Rayville, for appellee.

HAMITER, Judge.

A dwelling house situated in the city of Monroe, La., was rented by plaintiff B. F. Atkinson from defendant, Mrs. Stern, under

an oral agreement made on January 27, 1936. Immediately after the consummation of this contract Mr. Atkinson and his family took possession of the premises.

On the morning of March 16, 1936, Mrs. Atkinson, a corpulent person weighing approximately 232 pounds, ascended from the steps of the dwelling onto its front porch, preparatory to entering the house. On making her first step, a plank of the porch broke, causing a foot and leg to fall through the opening created and injuring her.

In this suit Mrs. Atkinson seeks to recover damages for personal injuries sustained, while her husband prays to be compensated for the loss of income and profits which his wife would have made for him, and for physicians' and medical expenses.

The petition alleges that the dwelling was the separate and paraphernal property of defendant, under her separate administration and control, and that the plank which broke was in a defective, rotten, and knotty condition. Allegations are also made that defendant knew or should have known of this defective condition and vice, and was negligent for not inspecting and repairing the premises; that she is liable for failure to keep said premises safe for use and occupancy; and that her negligence caused the accident.

In her answer defendant admitted the separate and paraphernal character of the property and that it was rented to Mr. Atkinson. She denied, however, that she was negligent in any manner or had knowledge or should have known of the defective condition of the porch floor. It was affirmatively averred by her that the lessee assumed all risks incident to the occupancy of the premises.

A trial of the merits on the issues created by the pleadings resulted in a judgment rejecting the demands of both plaintiffs. They prosecute this appeal.

The case presents for consideration the provisions of Act No. 174 of 1932. This enactment, the validity or constitutionality of which is not questioned, provides:

"Section 1. Be it enacted by the Legislature of Louisiana, That the owners of buildings or premises which have been leased under a contract whereby the tenant or occupant assumes responsibility for the condition of the premises shall not be liable in damages for injury caused by any vice or defect therein to any tenant or occupant, nor to anyone in the building or on the premises by license of the tenant or occupant, unless the owner knew of such vice or defect, or should within reason have known thereof, or had received notice of such vice or defect and failed to remedy same within a reasonable time thereafter.

"Section 2. That the term 'by license of the tenant or occupant' as used in the above section has reference to those who derive their right or license to be on the premises from said tenant or occupant, such as sub-tenants, roomers, servants, guests, customers, employees, members of the family and others of a similar status.

"Section 3. That all laws or parts of laws in conflict herewith are hereby repealed."

■ The foregoing statutory provisions require first a decision of the question: Did Mr. Atkinson, the tenant, assume responsibility for the condition of the premises? According to our appreciation of the evidence this must be answered in the affirmative. Mrs. Stern's version of the rental agreement is that Mr. Atkinson came to her home and stated that he would like very much to have the house in question. She informed him that it had been refused to fifteen or twenty other people because it was not in a livable condition and was not for rent. By reason of Mr. Atkinson's insistence that he was compelled to find a place for his family and upon his agreement to assume all responsibility for the condition of the premises, defendant permitted him to take possession of it for a monthly rental of $6. The testimony of Mrs. Stern regarding this point is corroborated by that of her husband, and it is not contradicted by any other evidence in the record.

Because of Mr. Atkinson's assumption of responsibility for the condition of the premises, Mrs. Stern is not liable in damages for the injuries caused by the vice or defect therein unless, as provided by the aforementioned act, (1) she knew of said defect, or (2) she should within reason have known thereof, or (3) she had received notice of such defect and failed to remedy same within a reasonable time thereafter. It is to these three propositions or exceptions that we now address ourselves.

■ In support of his contention that defendant possessed the knowledge contemplated by the above-quoted act, plaintiffs' counsel directs our attention to the

allegations of defendant's answer and to her testimony to the effect that she told Mr. Atkinson of the unlivable condition of the house. This statement of Mrs. Stern is not alone sufficient, in our opinion, to furnish the conclusion that she knew or should have known that the dwelling house contained vices or defects which might result in injury to persons using it. It is possible for a house to be free of injury producing imperfections, and, on account of its failure to receive proper attention for a lengthy period of time, still be unsuitable for living purposes. Defendant did not say, and no one testified regarding any statement made by her, that the premises were defective, unsafe, or dangerous.

■ Furthermore, it must be remembered that the defect or vice which occasioned Mrs. Atkinson's injuries was in an undressed board which was one inch thick, four inches wide, and approximately two feet long, and constituted a part of the front porch. Each of its ends was securely nailed to a solid joist. No other portion of the house was in any manner responsible for or contributed to the accident. According to our interpretation of Act No. 174 of 1932, which is above quoted, the vice or defect therein referred to and contemplated is that which caused the injury complained of. McFlynn v. Crescent Realty Corp. (La.App.) 160 So. 454.

Mrs. Stern was of the opinion that the front porch was in a satisfactory condition, for she had permitted Mr. Sims, a former tenant, to deduct from the rent due by him an amount sufficient to provide for its reconstruction during the month of October of 1935. This was approximately three months before plaintiff assumed occupancy of the property. The testimony of Mr. Sims was that, while he had possession of the premises, he and his son-in-law obtained some secondhand lumber, selected the choice pieces from it, and repaired the porch. This was done pursuant to the above-mentioned agreement with his landlord. He further testified that after these repairs were made numerous large ladies, including his daughter who weighed 235 pounds, danced on the porch, shouted and clapped their hands in the enjoyment and practice of their religious faith, and that no injuries resulted to them.

An inspection of the house was made by Mr. Atkinson on the day of and before renting it. When interrogated by his counsel regarding the general appearance of the front porch floor, he said that it looked to be all right when he examined the house. At another place in the transcript, we find his testimony to be that the house looked reasonably safe. According to Mrs. Atkinson, she walked on the porch, from the steps to the front door, approximately twice each day. She was asked if there was anything about the condition of the floor of the porch, from the steps to the door, that caused her to suspect or think that it was unsafe. Her answer was, "no."

Mr. Ousley, a general contractor and builder of Monroe, La., made an examination of the porch after the accident and appeared as a witness for defendant. He found that a new board had replaced the one that had been broken. His testimony was that not any of the boards east and west of the newly replaced piece was decayed. Knots were found in several of them, but these rested over the outside sills and did not impair the strength of the lumber. It was his opinion that the repair work on the porch, surrounding the place where the break occurred, was done in a workmanlike manner and with sound materials. He produced in court the two pieces which adjoined the replaced board. The broken piece was not available for it was burned shortly after the accident by a member of Mr. Atkinson's family. During the trial of the case, plaintiffs' counsel, according to the record, experimented with one of the produced pieces by placing an end of it on an elevation of about six inches and then stepped upon the board. No ill effects were noticed.

■ The afore-discussed evidence convinces us that defendant had received no notice of any vice or defect in the front porch where Mrs. Atkinson was injured, and that she did not know of it. Furthermore, in view of the fact that Mr. Atkinson made an examination of the premises and found them safe, and he and his wife lived there and used the porch daily for a period of several months without suspecting or detecting any defect therein or danger therefrom, we are unable to conclude that Mrs. Stern should, within reason, have known thereof.

Our opinion is that the judgment of the trial court is correct, and it is affirmed.