This is a suit by a domestic servant of a tenant against a landlord for damages for physical injuries alleged to have been sustained by falling plaster. Defendant in his answer denied liability on the ground that his tenant had assumed responsibility for such injuries as the plaintiff is alleged to have sustained.
There was judgment below in favor of the defendant and the plaintiff has appealed.
It appears that the defendant, Harry S. Armstrong, is the owner of the premises No. 401 Fairway Drive and that, at the time of the accident, his tenant was Mr. A.M. Dupre, Jr. There was a written lease executed between a former owner of the property, Mortimer F. Kelly, and the tenant, and assigned to Armstrong. In this lease there appeared the following stipulation under the heading "Responsibility for Damages":
"Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damage caused by leaks in the roof, by bursting pipes by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, except in case of positive neglect or failure to take action towards the remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing, of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties."
Defendant contends that he had no notice and knew nothing of any defects in the leased premises.
Section 1 of Act 174 of 1932 reads as follows:
"* * * The owners of buildings or premises which have been leased under a contract whereby the tenant or occupant assumes responsibility for the condition of the premises shall not be liable in damages for injury caused by any vice or defect therein to any tenant or occupant, nor to anyone in the building or on the premises by license of the tenant or occupant, unless the owner knew of such vice or defect, or should within reason have known thereof, or had received notice of such vice or defect *Page 507 
and failed to remedy same within a reasonable time thereafter".
While the provision in the lease requires written notice, there is nothing in the act itself to that effect and it is quite sufficient that the landlord have notice of the vice or defect or, under the prevailing circumstances, "should within reason have known thereof" and "failed to remedy same within a reasonable time thereafter".
The case turns upon a question of fact. It is conceded that there was no written notice. The tenant, Mr. A.M. Dupre, Jr., and his wife testified that the defendant visited the leased premises on or about July 13th, shortly after his purchase of the property which occurred on June 15, 1942, and about a month and a half before the accident occurred. They claim to have pointed out to Mr. Armstrong, at that time, several places in the house where the plaster was discolored due to leaks in the roof. Mr. Dupre, for example, testified that "there was a leak in the dining room, next to the wall; there was leak in the kitchen next to the outer room; there was a leak in the outer room and there was a leak in one or two of the bedrooms over the outside walls". All of these leaks were called to Mr. Armstrong's attention and he is said to have remarked "he would never have bought the place if he knew the condition it was in".
Mr. Armstrong testified that he had the roof examined and that there were no leaks; that some stains existed in the ceilings of some of the rooms but that they were old stains. In regard to the little room off the kitchen where the plaster fell and injured the plaintiff, he testified that this was not due to a leak in the roof, but to an accumulation of leaves in the gutter spout. He also declared that he had not been asked to make any repairs because the Dupres were moving as soon as they could find another place.
We are convinced, however, that Mr. Armstrong knew of the condition of the ceilings in the rooms, including the room in which the plaster fell, whether caused by the leaves in the gutter spout or a leak in the roof. We do not believe Mr. Armstrong was justified in assuming that the stains that he saw were harmless because they were old stains. It seems to us that it was his duty to remove the discolored plaster or, at least, to have made certain that there was no danger of its falling. Concerning the room where the plaster fell, which he said was due to an accumulation of leaves in the gutter spout, we do not understand how that fact could have affected the interior of the room, but whether it did or not, the plaster was admittedly discolored and, in our opinion, dangerous on that account. So far as the Dupres are concerned they may have been willing to live in the house without having it repaired as Mr. Armstrong says they were, but we are not dealing with a claim of the Dupres' but one by a third person, a domestic servant, who was, of course, rightfully on the leased premises. Mr. Armstrong's liability results from the fact of his having been the owner of the building when the accident happened.
Article 670 of the Revised Civil Code reads as follows:
"Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."
Article 2322 of the Code provides:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction".
Mr. Armstrong was not relieved under the contract of lease because he knew of the defect in the leased premises or, at least, should have known of it and failed to make repairs within a reasonable time. We conclude, therefore, that there is liability.
Lillian Mitchal was not seriously injured. She asks for a total of $278, which she itemizes as follows:
"$ 16.00 — Medical services 8 visits at $2.00 per visit. 2.00 — Medicine 60.00 — Loss of salary for six weeks at $10.00 per week. 200.00 — Pain and suffering." -------- $278.00
Dr. Jenkins treated the plaintiff and there is an admission in the record to the effect "that if the doctor was here he would testify that this woman received a sprain and contusion of the right shoulder and contusions of the scalp and neck". She testified that her shoulder was bandaged for about two weeks and that she *Page 508 
was away between five and six weeks and that she earned $10 per week. For all items of damage claimed we have concluded to allow her $200.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of Lillian Mitchal, the plaintiff, and against Harry S. Armstrong, the defendant, in the sum of $200, with legal interest from judicial demand.
Reversed.