94 So.2d 508 (1957)
Sylvester GREEN et ux., Plaintiffs-Appellees-Appellants,
v.
SOUTHERN FURNITURE COMPANY, Inc., et al., Defendants-Appellants-Appellees.
Daniel G. BAILEY et ux., Plaintiffs-Appellees-Appellants,
v.
SOUTHERN FURNITURE COMPANY, Inc., et al., Defendants-Appellants-Appellees.
Mrs. Rogenia LEGER, Plaintiff-Appellee-Appellant,
v.
SOUTHERN FURNITURE COMPANY, Inc., et al., Defendants-Appellants-Appellees.
Nos. 4350-4352.
Court of Appeal of Louisiana, First Circuit.
March 25, 1957.
Rehearing Denied May 2, 1957.
*509 Nos. 4350, 4352:
Wood & Jackson, Leesville, La., for plaintiff-appellant.
Plauche & Plauche, Lake Charles, La., for defendant-appellant, Southern Furniture Co. et al., tenant.
Porter & Stewart, Lake Charles, La., for defendant-appellee Kaplan et al. (owners).
No. 4351:
Robert L. Collings, Lake Charles, La., for plaintiff-appellant.
Plauche & Plauche, Lake Charles, La., for defendant-appellant, Southern Furniture Co. et al., tenant.
Porter & Stewart, Lake Charles, La., for defendant-appellee Kaplan et al. (owners).
TATE, Judge.
Essentially, the question involved in this appeal is whether legal liability for personal injuries to third persons attached to the landlord or to his tenant, or to both, when the canopy of a store building owned by the former and leased by the latter fell and injured three lady pedestrians.
In this opinion we will give reasons for judgment as to the questions of law common to the separate suits, involving the same defendants; in which individual discussions of quantum and decrees will be rendered, Green 94 So.2d 525, Bailey 94 So.2d 527, and Leger 94 So.2d 529.
The store building in question was located at 718 Ryan Street in the main business district of the city of Lake Charles. Shortly after noon on August 30, 1955, the canopy attached to the store building and overhanging the sidewalk fell and injured the three lady plaintiffs. As the District Court found, the evidence is substantially in agreement that the principal cause of the canopy's collapse was that an iron supporting rod holding up the store canopy was pulled loose from the rotted piece of lumber to which attached by the additional weight of approximately five tons of water collected on top of the canopy after two days of downpour. The water had collected on the roof of the canopy because the drainage downspout did not drain the water off fast enough, either because basically the downspout did not afford sufficient outlet to take care of the not-usual downpour or because (although there is no evidence to support, or to contradict, this argument) it had been allowed to become clogged with leaves and other refuse.
The board which gave way causing the collapse had become rotted by the seepage *510 of water over an undeterminable period of time. The rotted condition of this lumber could not have been detected by inspection. Neither the owner nor the tenant had knowledge or notice of this structural defect.
The three ladies injured were Mesdames Cora Green, Rogenia Leger, and Eulith Bailey; and they, together with Sylvester Green, husband of the former, and Daniel Bailey, husband of the latter,Mrs. Leger was a widowbrought suit for personal injuries and medical expenses sustained as a result of the accident.
Made defendants were: Southern Furniture Company, Inc., the tenant, and its public liability insurer, the General Accident Fire & Life Assurance Corporation, Ltd. (hereinafter sometimes jointly referred to as the "tenant" or as "Southern"); and Mrs. Ida I. Kaplan, David Kaplan, and Mrs. Patricia Kaplan, the owners in indivision of the property and their public liability insurer, the Phoenix Indemnity Company (hereinafter sometimes jointly referred to as the "owner"). By third-party petitions, both the owner and the tenant called the other opposing defendants in warranty should they be cast.
The District Court entered judgment in favor of the plaintiffs and against Southern; rejecting all demands against the owner. The tenant appealed, urging that the owner be held liable and alternatively that the amounts awarded be reduced. The plaintiffs also appealed the dismissal of their suit as against the owner. The latter answered the appeals urging affirmance of the judgments, and alternatively (besides reduction of the award) that if itthe owner be cast, then that there be judgment over in its favor and against Southern, in accordance with its third party petition and call in warranty.
Briefly, the opposing legal contentions of both sets of defendant-litigants may be summarized as follows: The owner-lessor argues that the tenant assumed in the written lease full responsibility for liability to others resulting from structural defects (except when the owner failed to repair same after notice); and therefore under LSA-R.S. 9:3221 (incorporating Act 174 of 1932 and set forth in full hereinafter), permitting such assumption as against third persons, is the proper party to be cast for damages herein. Contrariwise, the tenant argues that by the terms of the lease the owner reserved responsibility for structural defects and therefore retains its ancient civil law liability to others injured as a result of failures of the parts excepted from the tenant's assumption of liability.
We deem it advisable to discuss the pertinent law before discussing its application to the particular lease provisions with which we are concerned herein.
1. Civil law liability of owner and landlord.
Under the Louisiana civil law, unlike the rule in common law jurisdictions, the owner-lessor is held to strict liability, or liability without fault, for personal injuries sustained by others through the defective condition of the leased premises. Comment, "Lessor's Liability in Louisiana", 7 La.L.Rev. 406; Comment, "Liability of Lessor to Third Persons Lawfully on the Leased Premises," 16 Tul.L.Rev. 448.
LSA-Civil Code, Articles 670 and 2322,[1] provide that the owner of a building is liable *511 for damages caused by its ruin or fall, whether a result of neglect to repair it or of a vice in its original construction. "Neither ignorance of the condition of the building nor the circumstance that the defect could not be easily detected can be successfully urged as a defense by the owner," Thompson v. Commercial Nat. Bank, 156 La. 479 at page 486, 100 So. 688, at page 690; see also Roppolo v. Pick, La.App. Orleans, 4 So.2d 839, and the authorities cited therein (syllabus 5); Thiel v. Kern, La.App. Orleans, 34 So.2d 296 (certiorari denied), and authorities cited therein (syllabus 1). These cases hold that, for purposes of suits by injured tenants or third persons against him, knowledge of even latent defects for which he is responsible is imputed to the owner; he is presumed to know of them. See, among recent cases, Green v. Billa, La.App. Orleans, 86 So.2d 578, Gaida v. Hourgettes, La.App. Orleans, 67 So.2d 737.
Parenthetically, it should be remarked that the similar liability of the lessor under LSA-Civil Code, Articles 2693 and 2695,[2] to which we are also cited as a basis for liability, is not necessarily coextensive with that of the owner under LSA-Civil Code, Articles 670 and 2322. The lessor's liability under the former codal articles has been held to be only to the tenant and not to third persons (not even to the tenant's wife), where the lessor was not the owner of the property (as under a sublease), Duplain v. Wiltz, La.App. Orleans, 194 So. 60, Graff v. Marmelzadt, La.App. Orleans, 194 So. 62, both cases noted, 2 La. Law Review 744; see: Girouard v. Agate, La.App. 1 Cir., 44 So.2d 388, Tesoro v. Abate, La. App. Orleans, 173 So. 196, 197. However, other cases are said to hold to the contrary, Comment, 16 Tul.L.Rev. 448 at 451, Note, 26 Tul.L.Rev. 103 at 105; and although these cases so cited do rest liability to third persons upon the lessor's duties under LSA-Civil Code, Articles 2692-2695, Thomson v. Cooke, 147 La. 922, 86 So. 332, Robinson v. Fossett, La.App. 2 Cir., 33 So.2d 546, Willis v. Cahn, La.App. 2 Cir., 164 So. 452, Potter v. Soady Bldg. Co., La.App. 2 Cir., 144 So. 183, they do so without discussion of any difference between the liability of the owner and the lessor; and it may be significant that the facts therein show that certainly in the latter three cases, and probably in the other (Thomson) case cited, the landlord was also the owner of the property leased. Decision as to this distinction is unnecessary herein where the lessor's liability to the third persons for their injuries sustained can be predicated upon its legal liability as owner of the leased premises.
However, these strict codal obligations of the owner-lessor as to the condition of the premises may validly be assumed by the tenant as a condition of the lease; and thereby will be barred the tenant's recovery for damage sustained through structural defects for which the owner would otherwise be responsible. Clay v. Parsons, 144 La. 985, 81 So. 597; Pecararo v. Grover, Orleans, 5 La.App. 676. Likewise, the tenant could assume, as between himself and the owner, the latter's liability to third persons for personal and other injuries resulting from structural defects, Terrenova v. Feldner, La.App. Orleans, 28 So.2d 287, discussed in detail below.
But as squarely held by Klein v. Young, 1927, 163 La. 59, 111 So. 495, although the *512 lessee might validly assume such obligation as between himself and the owner-lessor, this assumption of liability by the tenant could not absolve the owner of responsibility to third persons injured through defects in the premises for which the owner was liable under the Civil Code, nor could it affect the rights of third persons to recover resultant damages from the owner. However, the effect of this Klein case was modified and largely overruled by the legislative enactment of Act 174 of 1932, discussed immediately hereafter, see, e. g., Paul v. Nolen, La.App. Orleans, 166 So. 509.
2. Effect and application of LSA-R.S. 9:3221, Act 174 of 1932.
LSA-R.S. 9:3221 incorporates Act 174 of 1932 in substantially similar wording as:
"The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time." (Italics ours.)
Clauses by which the tenant assumed responsibility for the condition of the premises have been held in numerous cases, some of which are cited in Thompson v. Suprena, La.App. Orleans, 65 So.2d 801, at page 803, to exonerate the owner from liability for, and to make the tenant alone liable for, injuries resulting from structural defects in the premises and sustained by the tenant or others on the premises through consent of the tenant.
But in the present case it is undisputed that the plaintiff ladies were not injured on the premises, but by the fall of the store canopy overhanging the public sidewalk. Although this point was not raised below, and therefore the able District Court did not pass upon it, we feel it is determinative of the primary liability herein, since LSA-R.S. 9:3221 specifically permits exoneration of the owner's civil law liability for structural defects only insofar as injuries "to the lessee or anyone on the premises who derives his right to be thereon from the lessee" are concerned. The statute thus does not permit the owner to exempt himself from such liability to others of the general public by reason of the condition of the premises owned by him. Plaintiffs were passers-by or neighbors injured by the fall of the materials composing the store building owned by the Kaplans, so as to constitute the owner liable to plaintiffs squarely under the terms of Article 670, LSA-Civil Code (set forth in full, footnote 1 above), as well as under Article 2322 (likewise, footnote 1).
Assuming that the plain provision of the subject section of the Louisiana Revised Statutes was ambiguous so as to entitle us to refer to the source statutes to explain the meaning, Perkins v. Brothers of Christian Schools, La.App. 1 Cir., 71 So. 2d 400, Note, 15 La.Law Rev. 472, we find that the Legislature clearly intended to restrict the application of the statute to injuries sustained by tenants or occupants themselves, and persons deriving their rights therefrom such as "sub-tenants, roomers, servants, guests, customers, employees, members of the family and others of a similar status," Section 2, Act 174 of 1932. It might be surmised that the legislature merely intended to prevent the prospective abuse inherent under Klein v. Young, 163 La. 59, 111 So. 495, where even though the tenant assumed full responsibility for the condition of the premises, his wifecf., Ciaccio v. Carbajal, 142 La. 125, 76 So. 583or members of his family or his guests or roomersall being equally considered third personscould still hold the premises' owner primarily liable; the owner being relegated to a right to indemnification under the lease contract from *513 the possibly financially irresponsible tenant, cf. Terrenova v. Feldner, La.App. Orleans, 28 So.2d 287.
For these reasons we hold that the lease provisions concerning responsibility for the condition of the premises, as between the present owner-lessor and tenant, could not divest the owner of his primary liability under our Civil Code for injuries sustained by plaintiffs: The latter were not lessees or derivees of lessees, from liability to which classes of persons alone LSA-R.S. 9:3221 permits an owner to exempt himself. Klein v. Young, 163 La. 59, 111 So. 495.
3. Liability as between owner and tenant under particular lease herein.
But although the owner herein retained his civil law primary liability to plaintiffs, the lease provisions govern as to whether, ultimately, the owner-lessor or the tenant should be responsible (as between them) for the damages caused to others by the defective condition of the premises, Terrenova v. Feldner, 28 So.2d 287, discussed below.
The lease was executed on November 30, 1953, for a term of five years and ten months commencing August 1, 1954 and terminating May 31, 1960. And it was of course during this term that the accident occurred. The lease reflects that the tenant was in possession of the premises at the time the lease was executed, and was to continue therein until occupancy under the written lease commenced August 1, 1954. (The evidence further shows that the tenant, or parties in privity with it, had been in possession of the premises and running their furniture business therein for about six years before execution of the lease, under other rental arrangements.)
There are three especially pertinent clauses or conditions of the lease which, for convenience in discussion, we shall label as Clause "A", Clause "B", and Clause "C", set forth in full in the margin.[3] Clause "A" pertinently provides that the tenant "at its own risk, hereby accepts full responsibility for the condition thereof [of the leased premises] during the term of the lease"; Clause "B", that although the tenant "accepts the building in its present condition" and shall pay for alterations and incidental repairs, nevertheless all "repairs necessary because of structural weakness, or defects in the building, itself, shall be repaired at the cost of the Lessor"; and Clause "C", that the "Lessor will not be responsible for *514 damage caused by leaks in the roof, or by any vices or defects of the leased property, or the consequences thereof, except in the case of neglect or failure to take prompt action toward the remedying of such defects after having received written notice" of them from the tenant. (Italics ours.)
Counsel for the tenant most skillfully argues that by Clause "B" the owner retained its liability for, and the tenant assumed no liability for, the structural weakness in the building itself which caused the canopy to fall. We, however, agree with the construction by the District Court herein that by Clause "A" and Clause "C", the parties agreed that the tenant assumed full responsibility for the condition of the premises and that the owner would not be responsible for damages resulting from the failure to correct structural weaknesses (for which repairs the owner was obligated to pay by Clause "B") except upon the owner's failure to repair such defects promptly after receiving notice from the tenant. (And as all parties agree, neither owner nor tenant had notice or knowledge of the latent and not reasonably discoverable defects which caused the accident.)
Thus, we feel that Clause "B" was not as argued for the tenant, relying by analogy on Thiel v. Kern, La.App. Orleans, 34 So.2d 296an assumption or retention of liability by the owner, but merely an agreement by the latter to pay for repairs. Clause "C" contains the sole provisions as to the owner's liability for the consequential damages resulting from the failure to correct such structural defects; and this clause, as aforesaid, restricts such liability to instances where the owner neglects, after notice from the tenant, to repair promptly defects called to the owner's attention by the tenant.
If by Clause "B" the owner retained the liability in all cases for consequential damages resulting from the failure to make structural repairs needed because of vices or defects in the leased property, then completely meaningless would be Clause "C"'s restriction of such liability to instances when the owner failed to make repairs for which he was responsible after receiving notice of the defects: for under the interpretation of Clause "B" so ably urged by counsel for tenant, the owner would be liable regardless of notice. But an agreement must be interpreted as a whole and, where possible, effect should be given to all clauses of an agreement; and a construction will be preferred which gives a reasonable meaning to each clause of an agreement, rather than one which leaves any clause useless or inexplicable. Articles 1951, 1955, LSA-Civil Code, and jurisprudence thereunder.
We think the case of Terrenova v. Feldner, 28 So.2d 287, decided by the Orleans Court of Appeal through Judge (now Mr. Justice) McCaleb to be especially apropos here. An employee of the tenant brought suit therein against both the owner-lessor and the tenant for personal injuries suffered when a stairway came loose from the wall and fell. The original lease was executed in 1929 (i. e., prior to the 1932 act), although the injuries were sustained in 1943.
The provisions of the Terrenova v. Feldner lease, set forth at 28 So.2d 288, were extremely similar to those in the present case. The lease therein provided that the premises were "accepted by the lessees in their present condition * * *, except for such repairs * * * written into this lease * * *. The lessee agrees to keep them [the premises] in the same order as received during the term of this lease * * *."
The Terrenova lease then contains the following provision (almost identical with the present) regulating liability for consequential damages from failure to repair structural defects:
"Lessor will not be responsible for damage caused by * * * any vices or defects of the leased property, or the consequences thereof, except in case of positive neglect or failure to *515 take action toward the remedying of such defects within reasonable time after having written notice from the lessee of such defects and the damage caused thereby."
The District Court rendered judgment against the tenant. The Orleans Court rejected the tenant's arguments that the owner-lessor should be cast instead. The tenant argued that (1) these lease provisions did not constitute an assumption of liability for injuries sustained by others consequential to a failure to correct vices and defects of the leased property, and (2) even if held otherwise, the lessor remained solely liable because the lease was confected prior to the 1932 act (now LSA-R.S. 9:3221.)
Judge McCaleb's opinion points out that covenants by which the tenant assumes responsibility for the condition of the premises and by which the owner will not be responsible for damage caused "by any vices or defects of the leased premises or the consequences thereof" have been consistently interpreted to import liability to the tenant for injuries suffered by third persons through vices or defects of the leased premises, 28 So.2d 289-290.
But, most interestingly, the opinion continues that the "fundamental error" of appellant's second argument was that it overlooked that even before passage of the 1932 Act the tenant was under these clauses at all times responsible to the owner for damages resulting from defects in the premises, even though these clauses did not constitute a defense to an action for such damages by a third person, Klein v. Young, 163 La. 59, 111 So. 495. Referring to the Klein opinion, Judge McCaleb concludes, 28 So.2d 290-291:
"The opinion does not say, nor do we think it was ever contemplated by the court, that an owner, condemned to pay damages to a third person as a result of the lessee's breach of a provision in the lease whereby the latter assumed responsibility for vices and defects in the property, could not maintain an action against the lessee for the damages he sustained by the breach or that the lessor, who was compelled to defend a suit brought by a third person sustaining injuries by reasons of the lessee's breach of covenant, could not call the lessee in warranty."
Very similar or identical lease covenants essentially, (1) that the tenant assumes responsibility for the condition of the premises, in conjunction with (2) a clause that the lessor will not be responsible for damages resulting from vice or defect in the premises except upon his failure to make timely repairs after notice of the defecthave been construed as making the tenant ultimately liable to third persons for personal injuries resulting from a vice or defect in the premises, not only in the Terrenova case, 28 So.2d 287, but also in the following cases, all but the first (Poss v. Brown) decided by the Orleans Court of Appeal: Poss v. Brown, La.App. 2 Cir., 73 So.2d 661; Thompson v. Suprena, La. App., 65 So.2d 801, 803; Thiel v. Kern, 34 So.2d 296, 297; Mitchal v. Armstrong, La. App., 13 So.2d 506; Atkinson v. Stern, La. App., 175 So. 126, 127; Paul v. Nolen, La. App., 166 So. 509; McFlynn v. Crescent Realty Corp., La.App., 160 So. 454.[4]
*516 We are unable to see any distinction between the covenants in such cases and those in the present instance. True, the quoted portion of none of these leases includes the specific agreement of Clause "B" herein of the landlord to pay for repairs of vices and defects of the building itself. But each (except the Atkinson oral lease) contains the specific provision that the lessor would not be responsible "for damage caused by * * * vices or defects of the leased property or the consequences thereof, except in case of positive neglect or failure to take action toward the remedying of such defects" after written notice from the tenant, see, e. g., Terrenova lease, 28 So.2d 288. This provision indicates to us quite conclusively that the owner-lessor retained under these leases his legal liability to make and pay for repairs necessitated by defects in the leased premises, LSA-Civil Code, Articles 2692 (2), 2693, 2694, 2717, cf. Articles 2715, 2716 (which we feel to be the sole intent and effect of Clause "B" herein), although relieved from liability for damages for defects or failure to make repairs unless he unreasonably delayed in correcting the defect after receiving notice thereof.
The tenant-appellant argues that despite his lack of actual notice of the defect causing the injuries herein, the owner-lessor is liable because the owner is legally held to imputed or constructive knowledge even of latent defects. This argument overlooks that such imputed knowledge may be used to justify strict liability of the owner to others for injuries caused through defects in the leased premises, but it is inapplicable where the tenant has assumed such liability. Otherwise, the provision commonly found in the leases that the lessor is not responsible for such damages except when he fails to repair the lease after notice, and LSA-R.S. 9:3221 upholding the validity of such assumption of liability as against third persons "unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time", would never serve to shift the liability for damages caused by structural defects from the owner to the tenant. (For under the civil law doctrine of strict liability the owner is always presumed to know of obvious or even of latent defects, see subheading 1 above.) That such clauses and the statutory provision do effectively shift liability is demonstrated clearly by the jurisprudence above cited.
For these reasons, it is our conclusion that under the covenants in the lease in question the tenant is ultimately responsible under the circumstances of this case for the damages sustained by plaintiffs because of the structural defects. The owner's third party petition against and call in warranty of Southern will therefore be sustained.
4. Independent or direct liability of tenant.
While it seems well settled that an assumption of liability by the tenant under the provisions of the 1932 act, LSA-R.S. 9:3221, gives rise to a direct action by the injured third person against the tenant, see e. g., Terrenova v. Feldner, La.App. Orleans, 28 So.2d 287, we are cited to no authority where such direct action against the ultimately responsible tenant (in addition to that against the primarily responsible owner) lies in the absence of application *517 of the 1932 act or of independent negligence on the part of the tenant.
We are unable to hold manifestly erroneous the District Court's determination that the present tenant's addition of the relatively slight additional weight of an asbestos undersheeting to the canopy and the tenant's failure to inspect the canopy to discover the poor drainage and the sudden accumulation of water and to anticipate the danger, under the circumstances of this case, did not substantially contribute to the accident so as to constitute actionable negligence and to cause the tenant to become independently negligent and solidarily liable.
In view of our determination holding the tenant ultimately liable herein, we do not feel called upon, either, to determine whether the stipulation in the lease assuming liability constituted an agreement in favor of third persons (i. e., a stipulation pour autrui, LSA-Civil Code Articles 1890, 1902) so as to make the tenant directly liable to these injured third persons. Contra: Grundmann v. Trocchiano, 13 La.App. 277, 125 So. 171 (on rehearing), 13 La.App. 277, 127 So. 748.
5. Decrees to be rendered.
By appropriate appeals and answers to the appeals all parties are properly before this court. We shall render separate decrees in favor of plaintiffs and against the owner based upon the latter's primary legal liability, and then shall render judgments in favor of the latter under its third party petition and call in warranty and against the Southern Furniture Company, Inc. (the only codefendant against which the owner sought judgment over against in the owner's answers to the appeals, thus affirming the District Court's determination that the tenant-appellant is ultimately liable under the lease contract for the damages allowed herein.
Amended and recast and affirmed.
ELLIS, Judge (dissenting).
Having prepared a rather full review of my position in this matter with which my colleagues disagree, I see no reason not to use the greater part of it in my dissent from the majority view.
On August 30, 1955, a canopy on a store building at 718 Ryan Street, Lake Charles, Louisiana, fell on Mrs. Cora Bailey Green, Mrs. Eulith Bailey and Mrs. Rogenia Leger, each of whom have filed suit against Mrs. Ida I. Kaplan, David Kaplan, and Mrs. Patricia Sugar, owners and lessors of the building to which the canopy had been attached, and their insurer, Phoenix Indemnity Company, and also against the Southern Furniture Company, Inc., lessee and occupant of the building and its insurer, General Accident Fire and Life Assurance Corporation, Ltd. Mrs. Green's and Mrs. Bailey's husbands, respectively, are also parties plaintiff with them for medical bills, etc.,
The real issue in the case is between the lessors and lessee and their respective insurers, as to which one is responsible, and it is suggested by plaintiffs that both should be cast in judgment.
After a trial on the merits the lower court rendered judgment rejecting all the plaintiffs' demands as against the lessors and their insurer, and rendered judgment in favor of the plaintiffs and against the defendant lessee and its insurer.
The building belonging to the owners-lessors (defendants herein) was inherited by them in 1940. Their father from whom they inherited the property had operated a furniture store at this location under the corporation name of Southern Furniture Company, Inc., but in 1944 the stock of the corporation was sold and in 1947 a new corporation with the same name was formed. It is shown that the canopy which fell and caused the injuries to the plaintiffs was constructed in 1935 or 1936, some ten years *518 prior to the time the defendant-lessee was incorporated.
On November 30, 1953, the owners-lessors entered into a written lease of the building with the lessee, Southern Furniture Company, Inc., the pertinent portions of same necessary for a decision being as follows:
"The leased premises are presently occupied by this Lessee, Lessee leases and accepts the said premises in their present condition, subject only to reasonable wear and tear from this date of August 1, A.D., 1954, and at its own risk, hereby assumes full responsibility for the condition thereof during the term of this lease.
"It is agreed by and between the parties hereto that the Lessee accepts the building in its present condition, and shall, at its own expenses, during the entire period of this lease make any alterations, changes, improvements or betterments, and shall likewise pay for all incidental repairs to the building (including all plumbing and wiring, as well as costs of painting and re-decorating) that may be necessary during the term of this lease in order to keep said building in a reasonably good state of repair, it being understood, however, that all repairs necessary to the roof, the rear and side walls of the building, the floor and foundation, and other repairs necessary because of structural weakness, or defects in the building, itself, shall be repaired at the cost of the Lessor.

"Lessor will not be responsible for damage caused by leaks in the roof, or by any vices or defects of the leased property, or the consequences thereof, except in the case of neglect or failure to take prompt action toward the remedying of such defects after having received written notice or, in emergency, verbal notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, as above provided, of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.
* * * * * *
"It is agreed that the Lessee shall make and pay for all alterations or changes which may be or become necessary to the premises leased herein without right of reimbursement or reduction in rental therefor, provided, however, that no alterations shall be made to the leased premises without the prior written consent of the Lessor first obtained." (Emphasis added.)
The testimony shows and the District Court so found that this canopy fell because "of a rotted piece of lumber and an additional load of water coming on it suddenly." It had been raining steadily on the morning that this accident occurred in the afternoon and approximately five tons of water had accumulated on the top of this canopy due to the excessive rain and the inadequacy of the drain pipe or pipes, which formed a part of this canopy. It is also shown that the wood in a part of the canopy had rotted at a point where one of the steel supports were fastened to it and at the time of the accident this steel support pulled through this decayed wood and as a result the canopy fell to the sidewalk injuring the plaintiffs.
The finding of the lower court as to the cause for the fall of this canopy is not disputed. Neither is the fact that the piece of rotted wood could not be detected by a simple inspection, so that neither the lessors nor the lessee knew of the defect. Further, no notice of any defect in the canopy had been given to the owners-lessors by the lessee prior to the time the accident occurred, and the owners-lessors neither knew nor should within reason have known of the defect which caused the fall of the canopy and the injuries to the plaintiffs unless such knowledge could be imputed to them.
*519 It is the lessee's and its insurer's contention that under the terms of this lease which have been emphasized, and particularly that portion thereof which makes the lessors responsible for all repairs necessary because of structural weakness or defects in the building itself, that this rendered the owners-lessors and their insurer responsible to the plaintiffs in this case, for under this clause they retain full responsibility for the condition and repair of the building insofar as any structural weaknesses were concerned.
Lessee and its insurer contend that the obligation and liability of the owners-lessors and their insurer is covered by Articles 670, 2322, 2315 and 2693 and 2695 of the LSA-Civil Code. On the other hand the owners-lessors and their insurer contend that under the provisions of the lease and LSA-R.S. 9:3221 the lessee and its insurer had assumed full responsibility for the condition of the premises and had relieved the owners-lessors from any liability.
LSA-R.S. 9:3221, formerly Act 174 of 1932, reads as follows:
"The owners of buildings or premises which have been leased under a contract whereby the tenant or occupant assumes responsibility for the condition of the premises shall not be liable in damages for injury caused by any vice or defect therein to any tenant or occupant, nor to anyone in the building or on the premises by license of the tenant or occupant, unless the owner knew of such vice or defect, or should within reason have known thereof, or had received notice of such vice or defect and failed to remedy same within a reasonable time thereafter."
There is nothing new about Act 174 of 1932 as far as the lessor and lessee were concerned for it was the law prior to that time that a provision in the lease contract in which the tenant assumed responsibility for the condition of the premises was binding as between the two but would not affect the rights of a third person to recover from the owner, nor would it affect the right in such a case of the owners-lessors to recover on the contract from the lessee. Klein v. Young, 163 La. 59, 111 So. 495; Terrenova v. Feldner, La.App., 28 So.2d 287.
It is also well settled that the burden of proof as to whether the tenant assumed full responsibility in this case is upon the owners-lessors who have tendered such a defense. Roppolo v. Pick, La.App., 4 So. 2d 839 and Hoffman v. Zimmer, La.App., 175 So. 115.
It is also well settled that a provision for the giving of notice by the lessees to the lessor is of no import, even though not given, where the lessor knew of such vice or defect or should within reason have known thereof. Mitchal v. Armstrong, La. App., 13 So.2d 506; Thompson v. Suprena, La.App., 65 So.2d 801. There is no reason suggested and I can think of none which would prohibit an owner from placing his obligations under the Codal Law on the lessee under the provisions of LSA-R.S. 9:3221 as to a part or portion of the leased premises and retaining or leaving himself with the obligations imposed upon him by the Codal provisions as respects parts or portions of the building. Under the specific terms of the lease in question that is exactly what the lessor has done in this case. Whereas the lease provided that the lessee accepted the premises in their present condition subject to reasonable wear and tear and assumed full responsibility for the condition thereof during the term of the lease and agreed at his own expense during the entire period of the lease to make any alterations, changes, improvements or betterments, and make incidental repairs in order to keep the building in a reasonably good state of repair, we then find a clause which limits the full responsibility apparently assumed by the lessee in the first paragraph of the lease, being that portion which has been emphasized. In this clause the lessor specifically retains or reiterates his obligation *520 to make all repairs necessary to the roof, the rear and side walls of the building, the floor and foundation and particularly any repairs necessary because of structural weaknesses or defects in the building itself. A structural weakness together with an inadequate drain for a sudden large volume of rain was the cause of this canopy falling on the plaintiffs. Lessor obligated himself to keep this canopy in repair as to structural weaknesses. There was no responsibility upon the lessee under the terms of this lease to repair the structural weakness in the canopy. The owners-lessors argue that under the next paragraph of the lease they are relieved of liability in this case for it provided that the lessor would not be responsible for damage caused by leaks in the roof or by any vice or defects of the leased property or the consequences thereof, except in the case of neglect or failure to take prompt action toward the remedying of such defects, after having received written notice or verbal notice of the lessee of such defects and the damage caused thereby. It further states that should the lessee fail to promptly so notify lessor as above provided, etc., that the lessee will become responsible for any damages resulting to the lessor or other parties.
While the provisions upon which the owners-lessors seek to relieve themselves of liability apparently on its face refer only to manifest and apparent vices or defects and the damage caused thereby, such as leaks in the roof or damage caused thereby, presumably to the furniture, or goods owned by the lessee in the building, this interpretation is further borne out by the stipulation that should the lessee promptly fail to so notify the lessor. This could not apply to a structural weakness such as the one in the canopy for it was not manifest nor could it even be detected by simple inspection and, furthermore, there was no duty under the terms of the lease placed upon the lessee to repair structural weaknesses nor to look for them. The duty was upon the lessor and if he wished to relieve himself of his obligation under the Codal provisions it was incumbent upon him to clearly do so under the plain provisions of the lease. Furthermore, under the facts in this case it would be impossible for the lessee to give notice for he had no knowledge and it is admitted could not possibly have detected the structural weakness. Knowledge may be actual or imputed by law for a contract could specifically provide for the giving of notice by the lessee whether the latter had actual notice or not. This lease does not so provide, and a fair and reasonable interpretation of the paragraph demanding "Prompt notice" would be that the giving of notice refers only to a vice or defect which was manifest or should reasonably have been manifest to the lessee. Even should I be in error in my interpretation of this paragraph, it would not change the result, for the lessor did not place the obligation imposed upon him under the Codal provision upon the lessee. In other words, the lessee under this contract has not assumed the obligation of repairing any vices or defects because of structural weakness in the building. The lessor under the terms of the lease is held fully accountable under Articles 670, 2322 and 2315, LSA-C.C., to third parties for the falling of this canopy because of structural weaknesses and is also charged with his obligation to the lessee under Articles 2693 and 2695 of the Codal article insofar as he reiterated his obligation to make any and all repairs necessary because of structural weaknesses or defects in the building itself. Under these facts the paragraph of the lease which provides for prompt notice to the lessor does not apply to the defect because of structural weakness nor would it apply had the roof of the main building fallen in or had the rear or side walls fallen down or the floor or the foundation rotted out, causing the building to fall for in such a case knowledge of this fact is imputed to the lessor and a provision for notice would be superfluous. The law charges him with notice. Thompson v. Donald, La.App., 169 So. 242; Willis v. Cahn, La.App., 164 So. 452; Price v. Florsheim, 13 La.App. 298, *521 127 So. 22; Roppolo v. Pick, supra, Byrd v. Spiro, La.App., 170 So. 384.
On the question of notice in the case of Thompson v. Suprena, supra, there was a provision for notice similar to the one in the case at bar however, the court, following the Mitchal v. Armstrong case, supra, stated that it was quite sufficient that the landlord have notice of the vice or defect or, under the prevailing circumstances, should within reason have knowledge thereof. It could be said in the present case that under the Codal provisions knowledge was imputed to the lessor and therefore requirement of notice is ineffectual.
Counsel for owners-lessors cites the case of Terrenova v. Feldner, supra, decided by the Orleans Court of Appeal, as being on all fours with the case at bar. In his brief he stated:
"In the case of Terrenova v. Feldner, La. App.1946, 28 So.2d 287, the Orleans Court of Appeal had occasion to discuss the obligation of a lessee, under a contract of lease exonerating the lessor from any damages caused by vices or defects in the leased premises, both under the Act 174 of 1932 and with respect to the general law of contract outside the statute. The Terrenova case involved a lease agreement practically identical to the facts in our case.
"There, the premises were:
"`Accepted by the lessees in their present condition, * * * except for such repairs written into the lease * * *'.
"`The lessee agrees to keep them (the premises), in the same order as received during the term of this lease. * * *'.
"`Lessor will not be responsible for * * any vices or defects in the leased property or the consequences thereof,'
except for failure to repair:
"`within reasonable time after having written notice from the lessee of such defects and the damage caused thereby.' 28 So.2d at page 288.
"The plaintiff was injured on a stairway which came loose from the wall as she was coming down the stairway.
"The court made no mention of notice to the lessor, and it is assumed no notice was given the lessor in this case, as required by the lease contract, probably for the same reason no notice was given in our case * * * the lessee was not aware of the defect.
"The Court, in the Terranova case, recognized that under the law of contract, and under the lease between the parties, the lessee was ultimately responsible to the lessor for any damages resulting to a third person, and under the authority of Act 174 of 1932 rendered judgment in favor of the injured plaintiff against the lessee, demands against the lessor being rejected.
"The court in its opinion said:
"`The fundamental error we find in this postulation (the claim of the lessee that the lease contract was entered into prior to the adoption of Act 174 of 1932) is that it overlooks the fact that Katz and Bethoff, Ltd., assumed the obligation of keeping the premises in good condition, and was, at all times, responsible to Feldner for damages for breach of the obligation even though the contract could not have been availed of by Feldner as a defense to this action by a third person prior to the effective date of Act No. 174 of 1932.'"
There is one other statement of fact that I deem important in the case relied upon by owners-lessors and that is to the effect that the lease provided that the lessor would be responsible for repairs as may be needed to the roof or rendered necessary by fire or other casualty. This case is not controlling insofar as the case at bar is concerned because the facts are easily distinguishable. The cause of the injury to the plaintiff in the cited case was occasioned by a defect existing in the stairway of the premises, the condition of which was assumed under the lease by the lessee, whereas the cause of the injury to the plaintiffs in *522 the case at bar was a structural weakness, the condition and repair of which was specifically retained or assumed by the lessor as an exception to the full responsibility clause. For the cited case to be applicable to the case at bar, it would be necessary for the roof of the building under lease in the cited case, a condition of which was made an obligation and responsibility of the lessor, to have fallen and injured the plaintiff. There is no argument but that Act 174 of 1932, now LSA-R.S. 9:3221, is constitutional and valid. For its provisions to be applied it must be clearly shown by the terms of the contract of lease, and in the present case the owners-lessors specifically retain all obligation imposed on them by the Codal articles heretofore referred to insofar as the cause (structural weakness in the canopy) of the injuries to the plaintiffs is concerned. The lessee was not responsible under the terms of the lease and is not liable to the plaintiffs for their injuries. The owners-lessors and their insurer are solely liable.
The record in this case is rather lengthy and involves simply the interpretation of three provisions of the lease between lessors and lessees, which are the first paragraph of the lease and then that portion of the second paragraph in which all repairs for structural weaknesses are to be at the cost of the lessor, and the third paragraph which states that the lessor will not be responsible for damages caused by leaks in the roof or by any vice or defect in the leased property or the consequences thereof except in the case of neglect or failure to take prompt action toward the remedying of such defects after having received written notice from the lessee of such defects, and "the damage caused thereby." This provision then states that should the lessee promptly fail to notify lessor as above provided of any such defects, lessee will become responsible for any damage resulting to lessor or other parties. The majority has held that the lessor did agree for repairs to be made at his cost for structural weaknesses but that he is not to be responsible for such costs unless and until the lessee promptly notified him of such a defect, that is, a structural weakness. In other words, under the facts in the present case, the majority says that, yes, the lessor was responsible for this structural weakness in the canopy provided the lessee had notified them that the canopy had such a defect. I cannot agree with this interpretation of the lease for several reasons.
First, it is admitted in the majority opinion and by all parties to the suit that the structural weakness responsible for the falling of the canopy could not possibly have been detected by lessee or lessor and, therefore, the requirement for prompt notice being absolutely impossible of fulfillment by the lessee, the interpretation given by the majority would lead to an absurd consequence. It would render absolutely meaningless and superfluous the retention by the lessor of the responsibility for structural weaknesses. The majority reasons that unless the paragraph with regard to notice is interpreted in this manner it would render that paragraph meaningless. I cannot agree with this interpretation and, furthermore, I cannot understand why, if such was the case, the lessor should be favored by the majority interpretation and relieved absolutely of a duty in a lease which was of his making and for which he clearly stated he would be responsible.
It is well settled that where an interpretation can be given to any contract which would give full force and effect to all its provisions that it should be so interpreted rather than to force one obligation over another obligation causing them to clash. The very fact that the retention of responsibility for structural weaknesses clashes with the obligation of notice by the lessee to the lessor of certain vices or defects, an example of which is stated in the provision as leaks in the roof, makes it clear to my mind that no attempt should be made to interpret them as being affected one by the other as has been done in the majority opinion. When you attempt to *523 say that the lessor is responsible for structural weaknesses only when he has been promptly notified of such structural weaknesses by the lessee, and in the same breath admit that notice would be impossible by the lessee to the lessor of such structural weaknesses, then it is necessary to choose which provision of the lease you are going to allow to control. The majority opinion sayswell, we know the lessee could not possibly notify the lessor, and never could, of such a structural weakness but the lease contains a provision for notice and we are going to give effect to the provision for notice rather than to the provision in which the lessor specifically retained responsibility for repairing structural weaknesses.
It also strikes me that LSA-R.S. 9:3221, which allows the shifting of responsibility from the lessor to the lessee, should be strictly interpreted and such responsibility should not be shifted unless the terms of the lease are clear, unambiguous and specific. I think it should be interpreted in this manner as this provision in our law can easily allow a lessor to shift full responsibility to a financially irresponsible lessee, even as to third parties.
Therefore, I believe that if it's necessary to interpret the two provisions in the lease together as has been done by the majority, that the provision of notice which is meaningless under the admitted facts and impossible of fulfillment should be read out of the lease rather than to read out of this lease the retention of responsibility by the lessor.
I believe that this lease can be interpreted so as to give it full force and effect. The provision with regard to the retention of responsibility by the lessor for structural weaknesses, to my mind, means exactly what it says and it should stand. The provision with regard to notice by the lessee to the lessor of any vices or defects such as leaks in the roof and damage thereby should apply to known and apparent defects only, thereby giving full effect to both provisions in the lease.
Therefore, as regards the interpretation of this lease, I think, first, that if the two provisions which cannot possibly be fulfilled if interpreted together are to stand, then the provision whereby the lessor retains responsibility for structural weaknesses should control the impossible provision for notice by the lessee before the lessor would be responsible, simply because it is admitted that no notice could ever have been given because the lessee could never possibly know of such structural weakness as occurred in this case and caused the damage. Secondly, I really believe that the lease should be interpreted so that the provision for the retention of the responsibility for structural weakness by the lessor should be given full force and effect and the provision with regard to notice should be held not to apply to the provision whereby the lessor retained responsibility for structural weaknesses, but only should apply to those vices or defects which were apparent and known to the lessee or could have been known to lessee by mere inspection. If this interpretation were given all the provisions would be given full force and effect, whereas if the majority opinion is adopted, immediately there is a clash which would render null and void or absolutely useless and as surplusage the provision whereby lessor retained responsibility for the structural weaknesses.
The authorities relied upon by the majority are not applicable for the reason that the lease in question in these cases did not contain any provision with regard to the retention of responsibility by the lessor for structural weaknesses which it is admitted in this case were impossible to detect.
Believing that the majority has interpreted the lease erroneously and that the lease can be interpreted so that all of its provisions will have full force and effect as I have outlined, above, I respectfully dissent.

*524 On Application for Rehearing
PER CURIAM.
Counsel for Southern, the tenant, in his very able application for rehearing has misapprehended the majority's interpretation of Clause "B". Counsel argues that the interpretation sustained in our original opinion relieves the landlord of liability to pay for repairs of non-apparent structural defects unless the landlord is given notice by the tenant, and that thereby Clause "B" becomes meaningless.
We held that under Clause "A" the tenant assumed responsibility for the condition of the premises. Clause "B" simply provided which party was to pay for necessary repairs: the tenant for incidental repairs, and the landlord-owner for repairs needed because of structural defects. Thus Clause "B" did not relate primarily to liability for consequential damages sustained because of failure to make needed repairs, the provisions of Clauses "A" and "C" governing in this respect. Clause "C" specifically provided that the landlord would not be responsible for these consequential damages caused by failure to make repairs (i. e., even though under Clause "B" the landlord was responsible to pay for these repairs themselves) except for those consequential damages resulting after the landlord's failure to make timely repair of structural defects as to which he had received actual notification of the need thereof.
The applications for rehearing are denied.
ELLIS, J., dissents from the refusal to grant rehearings in these cases.
ELLIS, Judge (dissenting).
I respectfully dissent from a refusal to grant a rehearing herein for the reasons stated in my dissenting opinion and furthermore believe that the holding of the majority as explained in its Per Curiam is not sound. I do not believe that Clause B should be interpreted as a simple provision designating that the landlord owner was merely to pay for repairs needed because of structural defects. This Clause in my opinion means that the landlord owner, by specifically retaining the obligation to pay for all necessary repairs because of structural defects, also burdened himself with all damages resulting from his failure to make such repairs. A landlord is the dictator of the contract, and it is equally true that the one who controls the purse strings controls the execution of an obligation for which he is to pay. The landlord under the terms of Clause B had the right to select the contractor, had the right to control the price to be paid for the repairs on account of structural defects. In other words, the obligation to pay included the obligation to make the repairs and imposed liability upon the landlord for failure to make such repairs. The majority in its Per Curiam further explains its opinion by saying that Clause C takes care of this by imposing on the landlord responsibility for consequential damages caused by failure to make repairs, except for such damages resulting after the landlord fails to make timely repairs for structural defects as to which he had received actual notification of the need thereof. As pointed out in my dissent, by interpreting this Clause as controlling Clause B has the absolute effect of destroying the obligation imposed under the latter clause (B) for the simple reason that it is shown and agreed in this case that knowledge of the structural defect in this case was absolutely impossible and, therefore, the tenant could not possibly have notified the landlord of such structural defect. In my opinion Clause C does not apply to any structural defects or weaknesses. I am still of the opinion that the contract can be construed so as to give full meaning to each and every clause.
I therefore dissent from the refusal to grant a rehearing.
NOTES
[1] "Art. 670. Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers,* under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."

(* LSA-R.S. Note: "Error in English translation of French textthe word `passengers' should be `passers-by'.")
"Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
[2] "Art. 2693. The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make, as hereafter directed.

"Art. 2695. The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
[3] "[Clause A] The leased premises are presently occupied by this Lessee. Lessee leases and accepts the said premises in their present condition, subject only to reasonable wear and tear from this date [November 30, 1953] to August 1, 1954, and at its own risk, hereby accepts full responsibility for the condition thereof during the term of the lease.

"[Clause B] It is agreed by and between the parties hereto that the Lessee accepts the building in its present condition, and shall, at its own expense, during the entire period of this lease make any alterations, changes, improvements, or betterments, and shall likewise pay for all incidental repairs to the building (including all plumbing and wiring, as well as cost of painting and redecorating) that may be necessary during the term of this lease in order to keep the said building in a reasonably good state of repairs, it being understood, however, that all repairs necessary to the roof, the rear and side walls of the building, the floor and foundation, and other repairs necessary because of structural weakness, or defects in the building, itself, shall be repaired at the cost of the Lessor.
"[Clause C] Lessor will not be responsible for damage caused by leaks in the roof, or by any vices or defects of the leased property, or the consequences thereof, except in the case of neglect or failure to take prompt action toward the remedying of such defects after having received written notice, or, in emergency, verbal notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, as above provided, of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties." (Italics by the court.)
[4] The Poss and Thiel cases, after noting the effect of the covenants as shifting liability arising from defects in the leased premises, held the covenants ineffective under the circumstances of those cases since the injuries arose from defects in a portion of the premises reserved for joint use of the tenant and others and outside the leased premises. The Thompson and Mitchal cases refused to relieve the owner of liability because he actually knew, or should actually have known, of readily discoverable defects in the leased premisesa situation which admittedly does not apply here.

The Atkinson case concerned an oral agreement by the tenant to assume all responsibility for the condition of the premises, without a specific agreement that the lessor would be absolved of liability to others for vice or defects in the premises; nevertheless, such oral agreement was held to have this effect. The other cases cited concerned leases containing both covenants approximately identical with the clauses of the Terrenova case.
Cf. also Gardiner v. De Salles, 1930, 13 La.App. 83, 126 So. 739, decided before the 1932 statute, concerning covenants identical to those in the Terrenova case, where the trial court held the tenant solidarily liable with the owner (the tenant did not appeal, however, so the decision is not necessarily authority for the solidary liability of landlord and tenant under such circumstances).