GRUNDMANN v. TROCCHIANO ET AL.

(February 16, 1929. Opinion and Decree.)
(December 26, 1929. Opinion and Decree
on Rehearing.)

Lemle, Moreno & Lemle, of New Orleans, attorneys for appellant, Crescent Candy Co., Inc.

Francis P. Burns, of New Orleans, attorney for appellee.

Herve Racivitch and Robt. L. Hickerson, of New Orleans, attorney for Walter B. Moses.

JANVIER, J. Ernest Grundmann received injuries as the result of the fall of an elevator in which he was descending from the fourth floor of a building belonging to Peter Trocchiano and Walter B. Moses, two of the defendants. The first and second floors of the four-story building were leased to Crescent Candy Company, Inc., a corporation of which Trocchiano was secretary-treasurer.

The fourth floor had been leased to Liberty Candy Company, Inc., of which a Mr. Hugo was president and manager.

The lease from Trocchiano and Moses to Crescent Candy Company, Inc., and the lease from Trocchiano and Moses to Liberty Candy Company, Inc., were both in writing, and each contained the following stipulation:

"If there are any elevators, lifts, machinery or plate glass on the premises, the care, maintenance and repairs of same are assumed by lessee, together with all liability or claims for damages."

During January, 1927, the Liberty Company was losing money, and Mr. Hugo, on behalf of that company, and Mr. Grundmann, plaintiff, who was an employee and a stockholder of the Liberty Company, made a verbal agreement under which Grundmann took over the fourth floor, including the use of the machinery of the Liberty Company, and began the manufacture of candy on his own account, using the trade-name "Merchants' Candy Company."

On February 23, 1927, while Grundmann was on the elevator, together with a customer, the elevator tender, and some bundles, the elevator fell a distance of about 50 or 60 feet, and Grundmann received injuries which formed the basis of this suit. He seeks to hold Trocchiano and Moses liable as owners of the premises under articles 670 and 2322 of the Civil Code, which articles read as follows:

670. "Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."

2322. "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

Liability is sought to be fastened on the Crescent Candy Company, Inc., by reason of the charge that Grundmann was occupying the fourth floor of the building as sublessee of that company and also by reason of the assumption by that company in its lease of the liability for damages resulting from the defective condition of the elevator; Grundmann claiming that, since the Crescent Candy Company, Inc., assumed the duty of keeping the elevator in repair, he, having a right to be in the building and to be on the elevator, can hold that company under that assumption in addition to his right to hold it as his landlord.

The owners of the building deny their liability on the ground that Grundmann was in the building as the substitute for Liberty Candy Company, Inc., and that, as the lease to that company also contained the stipulation placing upon it the duty of keeping the elevator in repair, and since Grundmann's rights arise only through the lease of the Liberty Candy Company, Inc., that clause in the lease is effective against Grundmann and deprives him of his right to recover from them.

The Crescent Candy Company, Inc., contends that it had no contractual relationship with Grundmann and that the clause in its lease is nothing more than an indemnity agreement in favor of the owners of the building and does not create any direct right in third parties.

The most important question to be determined is whether Grundmann took over the lease of the Liberty Company, or was given a new lease to the fourth floor by the owners of the building.

If he "took over" or assumed the lease of the Liberty Company, he is, of course, bound by the terms of that lease; whereas, if a new verbal lease was given him by the owners, they owed him the duty of keeping the elevator in repair, since there is no claim that he verbally assumed any obligation with regard to the elevator.

The testimony of Grundmann throws no light on the question, but Hugo, the president of the Liberty Company, states that he agreed with Grundmann to turn over the business to him and that he (Grund-

mann) "was to assume the rent and the operating expenses." In corroboration of this, we find that either the next day, or shortly thereafter, Hugo and Grundmann called on Trocchiano and told him of this arrangement, and that Trocchiano said, "All right, all right." As we have already said, Trocchiano was one of the owners of the building and seems to have represented the other owner, Moses, in all transactions connected with the building.

We find nothing in the record which justifies the belief that there was any intention on the part of any one to cancel the written lease between the owners and Liberty Candy Company, Inc., as tenant and to substitute a new verbal one with Grundmann. On the contrary we are well convinced that all that the parties had in mind was to substitute Grundmann for the Liberty Candy Company, Inc. It is not disputed that, after Grundmann was injured, the Liberty Company was compelled to commence payments of rent for the fourth floor, in spite of the fact that they were losing money and wanted to discontinue. It is certain that, if they felt that the owners of the building had given Grundmann a new lease and had canceled their lease, they would have refused to pay rent after Grundmann's injury prevented him from continuing in the use of the premises.

As to the question of the responsibility or obligation placed upon a subtenant by stipulations in the lease between the landlord and main tenant, we find the case of Klein vs. Young, 163 La. 59, 111 So. 495, 496, interesting, but not applicable here. That case is authority for the proposition that the "owner of building cannot, by contract with lessee, escape responsibility for obligation arising ex delicto to one renting a room from lessee, and injured when stairs

gave way, under Civ. Code, arts. 670, 2315, and 2322, creating liability in damages for injuries to others, resulting from owner's neglect to keep building in repair, articles 2693-2695 being inapplicable." But that is not the situation here, for Grundmann in effect assumed the lease of the Liberty Candy Company as a whole and stepped into the legal shoes which had previously been occupied by that company, and thus became bound by the provisions of that company's lease.

"The transferee of a lease is liable to the same obligations as the original lessee. By acquiring the rights of the lessee, he incurs his responsibility." Briede vs. McClellan, Orleans App., No. 7999 (see Southern Reporter Digest.)

"Assignee of lease has no greater rights than assignor." Gottlieb vs. Schloss, 5 La. App. 379.

Though, of course, a landlord may not, through his contract with his tenant, avoid his liability to third persons lawfully in the premises, nevertheless it is well settled that he may do so by contract, so far as his obligation to the main tenant is concerned. The case of Klein vs. Young, supra, relied on by plaintiff, is authority for this proposition, as is evidenced by the following quotation from the decision in that case:

"The lessee may, of course, as a condition of the contract of lease, dispense with the implied warranty in his favor, under articles 2693-2695, in which event, of course, no sublessee can enforce it. But the lessee cannot, by assuming the obligation, absolve the owner of the building from his responsibility to third persons who may be injured in consequence of the owner's neglect of a duty imposed by law in their favor."

It is, however, strenuously argued on behalf of plaintiff, Grundmann, that he did not lease the fourth floor from the own-

ers of the building, nor was he occupying that floor as substitute for the Liberty Candy Company, but that he had leased it from the Crescent Candy Company, Inc., and that that company was the tenant of the whole building and that the owners of the building are liable to him under the codal provisions mentioned, and that the Crescent Candy Company, Inc., is also liable to him as his landlord.

He bases this claim that he was leasing from the Crescent Candy Company, Inc., almost exclusively on a plea of judicial estoppel. This plea results from the fact that some four months after the accident, in a suit on an open account brought by Grundmann (under the trade-name "Merchants' Candy Company") against Crescent Candy Company, Inc., that company, in its answer, among other items which it claimed as set-offs, alleged that Grundmann (Merchants' Candy Company) was indebted to it in the sum of $25 for rent and that the judgment rendered in that suit recognized and took into account this claim for rent.

As we have already shown, the true fact was that the Crescent Candy Company, Inc., had no rights whatever in and to the fourth floor, and manifestly could not, and in fact did not, transmit any rights in the use of that floor to Grundmann, and his sole rights came from his agreement with the Liberty Company, which was assented to by the owners of the building.

No doubt he honestly thought he had dealt with the Crescent Candy Company, Inc., with reference to that floor, but if he did, his error resulted from the fact that Trocchiano, one of the owners of the building, and who also acted for the other owner, was also an officer of the Crescent Candy Company, Inc., and the verbal acceptance of Grundmann as the substitute tenant for the Liberty Company was given by Trocchiano while all of them were in the office of the Crescent Candy Company.

Since, then, the true fact is that the Crescent Candy Company was not Grundmann's landlord, the sole question for our consideration is whether or not the plea in the other suit to which we have referred created an estoppel which, in law, may not yield to proof of the truth.

For many years the jurisprudence of this state on the effect of a judicial allegation was in a rather unsettled state. Many decisions held that such an allegation created an insurmountable obstacle in the path of him who had made it and prevented him from introducing evidence as to the true fact, regardless of whether or not the party relying on the plea of estoppel had been misled to his detriment by the allegation in question. Many other decisions, on the contrary, held that a judicial allegation creates a presumption but that this presumption may be overcome by proof of the true fact, unless the other party was misled by the first allegation and suffered injury as a result, or was led into a false position; in other words, that the judicial allegation in itself does not create a complete estoppel, unless there is in the situation the element of an equitable estoppel as well. Which of the two lines of cases is based on the more sound reasoning, we are no longer privileged to consider, because our Supreme Court, in a decision in which Mr. Justice Provosty reviewed almost every Louisiana case involving judicial estoppel, has adopted the latter view and has said that, unless the elements of an equitable estoppel are present, proof of the truth will overcome a prior judicial allegation. Farley vs. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, 137, L. R. A. 1915A, 200, Ann. Cas. 1915C, 717. In that case the court said:

"At common law the point has never been doubtful; the rule has always been that while admissions made in other suits are of course evidence, as being declarations against interest, and therefore presumably true, they are no more conclusive, or estoppels, than admissions made out of courts."

And, after an exhaustive discussion of the whole question, announced its conclusion as follows:

"Our conclusion is that Weaver and Johnson, the warrantors, are not concluded by the allegations made in this former suit, which have in no way been acted on by plaintiffs, or in any way prejudiced them, and therefore do not give rise to any estoppel."

There then remains a consideration of whether Grundmann was harmed by the allegation made by the Crescent Candy Company, Inc., in its answer in the other suit. Grundmann admitted that he owed somebody the rent. No one else has attempted to collect it from him, and the only parties who, under the contentions of any one, could have claimed it, the Crescent Candy Company or the owners of the building, have introduced evidence to show that, though it was collected by the Crescent Candy Company, it was turned over to Trocchiano as the representative of himself and the other owner of the building. A party is not prejudiced or harmed if he pays to the wrong person something he admits he owes, if the person to whom he pays it turns it over to the right party and that party admits receiving it, and the obligation is canceled thereby.

So far as the rights of the parties in the suit now before us are concerned, they came into existence, if they exist at all, at the time of the happening of the accident, and nothing that any of them may have said or done, judicially or otherwise, four months after the accident and in another suit, could affect the rights resulting from that accident.

Then, too, the allegation that rent was due for one month was not specific, in that it did not state that the rent was due for the month of February, which was the month in which the accident took place, and while we are of the opinion that, in all probability, it was rent for that month which was referred to, we doubt that we could sustain an estoppel based on such an indefinite allegation, even if we felt differently about the legal question, which, so far as we are concerned, was settled by the Supreme Court in Farley vs. Frost-Johnson Lumber Co., supra.

Of course, the allegation in the other suit has evidentiary value and if the remainder of the record left us in doubt as to who was Grundmann's immediate landlord, that allegation might be sufficient to cause the evidence to preponderate, but except for that allegation and for Grundmann's unfounded belief as to who was his landlord, the proof is entirely the other way.

Plaintiff's contention that the Crescent Company, having, in its lease from the owners of the building, assumed responsibility for the condition of the elevator and having agreed to maintain it in good condition, is thus rendered liable directly to him, is not, in our judgment, sound. This stipulation in the lease was nothing more than an indemnity agreement in favor of the landlord. It did not run in favor of third parties and did not create in any third party a direct obligation. In Allen & Currey Mfg. Co. vs. Shreveport Waterworks Co., 113 La. 1111, 37 So. 980, 987, 68 L. R. A. 650, 104 Am. St. Rep. 525, 2 Ann. Cas. 471, there was involved the question

of whether a citizen, whose property was destroyed by fire solely because of insufficient water service, could proceed directly against the waterworks company which, by contract with the city, had bound itself to furnish the fire department with water. The court held that no such right existed. In doing so it expressly overruled an earlier case, Planters' Oil Mill Co. vs. Monroe, 52 La. 1243, 27 So. 684; Id., 108 La. 236, 32 So. 376. If, in a case involving the rights which citizens claim they are entitled to through the city, such rights as are here claimed were denied, it can hardly be said that a private individual is entitled to direct rights as a result of such a stipulation as is contained in the contract here between other parties. It is not a stipulation pour autrui.

As the court said in the Allen & Currey case, supra:

"We conclude that the engagement of the defendant company to the city of Shreveport to furnish water to her for the use of her fire department was not a stipulation pour autrui.

"We have discussed the case thus far as if the question it involves were res nova; but the exact question has been decided repeatedly in other jurisdictions, and once already by this court. Upon the latter decision—Planters' Oil Mill v. Monroe, 52 La. Ann. 1243, 27 So. 684—the plaintiffs place much reliance. But for the reasons hereinabove given, we are not satisfied with the conclusion there reached, and we have concluded to overrule it. By so doing we take this court from among a slender minority, and range it among the very large majority of the courts of the country which have had occasion to consider this question."

But if it did create a direct obligation in favor of a third party, Grundmann, as we have said, was in no sense such a third party, because the lease which he himself assumed (that of the Liberty Candy Company, Inc.) contained the same stipulation. Therefore the Crescent Company was no more responsible to third parties than he was himself.

If he did not know that the lease which he assumed contained such a stipulation, he has no one but himself to blame because he must have known that the Liberty Candy Company, Inc., had a lease, and it was his duty to investigate and find out what were the terms of that lease.

Trocchiano, one of the owners of the building, did not appeal, and the judgment is, of course, final as to him. Plaintiff has answered the appeal of the other two defendants and has asked that the amount awarded below be increased. Since we are of the opinion that the judgment in plaintiff's favor should be reversed, it is, of course, not necessary for us to discuss the quantum, because, as to the other defendant, the judgment is final.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of Walter B. Moses and Crescent Candy Company, Inc., and against plaintiff, dismissing plaintiff's suit at his cost.

WESTERFIELD, J. (dissenting). Generally speaking, the owner of a building is responsible for personal injuries caused by its defects. The Liberty Candy Company, a tenant of the space occupied by Grundmann, had, under a written lease, assumed the owner's responsibility for injuries which might be caused by a defective condition of the elevator. It, at all times, claimed to be the tenant of this space and even sued Grundmann for rent and collected it. The contention that Grundmann verbally assumed the lease is not sustained by proof of his mere occupancy of the

space. Moreover, this issue is not raised by the pleadings and if fairly before the court, at this time, was evidently an afterthought.

Finding myself unable to agree with my colleagues, I respectfully dissent.

## ON REHEARING

BOATNER, Judge ad hoc. A rehearing was allowed in this case because of the plaintiff's assertion in his application for rehearing that there is nothing in the record to support the court's findings in its original opinion that there was a lease in writing from the owners to the Liberty Candy Company, which contained the same stipulation with regard to elevators as did that of the Crescent Candy Company, and that the plaintiff assumed the lease of the Liberty Candy Company.

Re-examination of the record · discloses that the plaintiff's complaint is not well founded. It is true that when the transcript of appeal first reached this court it did not include the lease of the Liberty Candy Company; but the lease was produced at the trial in the court below and was offered in evidence there and it is now before us here. It is found to contain the following stipulation: "If there are any elevators, lifts * * * on the premises, the care, maintenance and repairs of same are assumed by lessee, together with all liability or claims for damages"— the same, word for word, as the clause on the same subject in the Crescent Candy Company's lease made on the same form.

With regard to the character of the agreement under which the plaintiff came into the possession and control of the fourth floor of the building, it was oral, and, as is not unusual, it is not stated with precision by the witnesses who testify about it. But it appears with sufficient distinctness that in December, 1926, about two months before the accident, the plaintiff bought stock in the Liberty Candy Company; that during January, 1927, he became, as he says, at one place a "kind of manager," or at another a "co-worker," in its business; that towards the end of January, Hugo, president of the company, becoming hopeless of its success, agreed to turn its plant, supplies of raw material, and business over to plaintiff; and that on February 5, 1927, eighteen days before the accident, the plaintiff went into possession of the place and began carrying on the business for his own account. It is true he testifies he was never shown the Liberty Company's lease and so does Hugo, but that was because, as Hugo says, "He (Grundmann) understood these conditions" and knew the company had a year's lease. Considering that he was succeeding the company in its business and taking over its plant, the plaintiff would have been inept and negligent beyond the ordinary if he had not, in one way or another, made himself acquainted with the business he was acquiring; and a thing of first importance, as any man must know, would be the lease under which the place of business was held.

We do not think the record supports the plaintiff's contention that the effect of his understanding with Hugo was that the Liberty Candy Company made to him a new and independent lease. Plaintiff does not say anywhere that he was to pay rent to the Liberty Candy Company and he made no such payment. In fact, he insists that he took no lease at all from the Liberty Company; it was just a verbal

arrangement, he says. The testimony of Hugo in effect is that Grundmann succeeded the Liberty Candy Company as tenant and took responsibility for the rent and operating expenses of the place after January.

The fair result of this was not a new lease from the Liberty Company to the plaintiff, but the assumption by the latter of the former's existing lease, and it is not inconsistent with this view that, after the plaintiff was incapacitated by his injuries, the Liberty Candy Company paid the rent, for, of course, it remained bound on its lease, unless discharged by the lessor, and that was not done.

Plaintiff argues that in any event there is no written evidence of his assumption of the lease, and that under Civil Code, art. 2278, it can be proved in no other manner.

That article forbids the reception of parol to prove the promise to pay the debt of a third person.

As we have seen, the facts here are that the plaintiff acquired the business of the Liberty Candy Company, with its stock of raw materials, took possession of the place which it held under lease, and was carrying on the business for his own account in the leased premises.

Leases are not required to be made or accepted in writing, nor are transfers of leases. May one accept the transfer of a lease, and enter in the enjoyment of the rights which it confers, while escaping its obligations, if only he omits to execute a writing? Applying the article of the Code to the facts of this case, may one himself obligated, though only by parol, to keep an elevator in repair, hold some other responsible to him for his injuries caused by lack of repair of the elevator? Obviously the article has no application.

The original decree is reinstated.

Original decree reinstated.

WESTERFIELD, J., dissents.

HIGGINS, J., takes no part.