Jessie Dale Long MILLS, Individually and as Guardian ad Litem for Minors Jesse Lynn Mills and Joseph Randall Mills,

v.

The FIDELITY & CASUALTY COMPANY OF NEW YORK, Yuba Consolidated Industries, Inc., and Insurance Company of North America

v.

Dorlin P. MAGOUIRK, d/b/a Southern Plumbing Company and Marquette Casualty Company, Third-Party Defendants,

v.

CENTRAL CONSTRUCTION COMPANY and Employers Liability Assurance Corporation, Third-Party Defendants.

Civ. A. No. 8007.

United States District Court
W. D. Louisiana,
Shreveport Division.

Feb. 27, 1964.

Percy N. Browne, Shreveport, La., for plaintiff.

Wilton H. Williams, Jr., Blanchard, Walker, O'Quin & Roberts, Richard H. Switzer, Lunn, Irion, Switzer, Trichel & Johnson, Charles L. Mayer, Mayer & Smith, Benjamin C. King, and Edwin L. Blewer, Jr., Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendants and third-party defendants.

BEN C. DAWKINS, Jr., Chief Judge.

The widow and children of L. V. Mills obtained judgment in the total sum of $85,000 for his wrongful death, rendered *in solido* against Fidelity & Casualty Company of New York (Fidelity), Yuba Consolidated Industries, Inc. (Yuba), and Yuba's insurer, Insurance Company of North America. The Court of Appeals for the Fifth Circuit affirmed. Fidelity & Casualty Co. of N. Y. v. Mills, 319 F. 2d 63 (5 Cir.1963). Execution of judgment was stayed pending the outcome of the cross-claim and third party complaints now before the court.

Mills was killed in an automobile accident on June 9, 1960. As he proceeded in a southerly direction on Jewella Road, in Shreveport, Louisiana, his station wagon was struck by a 1951 Oldsmobile sedan driven by one Melvin Smith who had swerved to avoid hitting a pile of dirt placed in the north-bound lane by pipeline construction crews. The negligence with which the insured defendants were charged was failure properly to safeguard the public from the obstruction placed in the highway and violation of Shreveport Ordinance No. 10 of 1939.

Fidelity's insured, United Gas Pipe Line Company (United), had obtained a permit to do the necessary excavating to replace an old, smaller pipeline along the Jewella Road. Ordinance No. 10 of 1939 in Section 11 provides that " * * * it shall be the duty and obligations of the holder of a permit to safeguard the public in every manner by maintaining the necessary guards, barricades, red lights, etc.; for said protection during construction and by maintaining the street or alley surface in good and safe condition until the City forces begin said repairs or repaving work."

In a cross-claim against Yuba and its insurer, Fidelity sought indemnity for any judgment that it might be required to pay. Although United secured the permit required by city ordinance for pipeline construction, all of the work was performed by Yuba, directly or through subcontractors, pursuant to a contract between United and Yuba dated April 22, 1960. Under contract general condition B–3, Yuba accepted the work as an independent contractor; condition B–6 placed responsibility for negligence of subcontractors upon the contractor; and condition B–12 required the contractor to familiarize itself with all applicable laws, to take necessary precautions to prevent any accident, to put up and maintain suitable and sufficient barriers, signs, lights and other necessary protection, and to accept full responsibility for results.

Notwithstanding the above provisions, Yuba contends that Section B–23 of the contract required United to direct the safety of the work and that its failure to do so was negligence which precludes its claim for indemnity. Section B–23, in pertinent part, reads:

"B–23 *ENGINEER TO DIRECT WORK*

"The Engineer shall have the right to direct the sequence in which all work under this Contract shall be conducted insofar as may be necessary to secure the safe and proper progress and the specified quality of the work, and all work shall be done and all materials shall be fur-

nished to the satisfaction and approval of the Engineer."

Construing this provision in conjunction with the other contract provisions, it is clear that United did not undertake responsibility to Yuba for safe conduct of the pipeline construction, but, to the contrary, in Section B–12 it specifically placed this responsibility upon Yuba.

A pipeline cannot be inspected after it is completed and covered with dirt. Of necessity the owner must satisfy itself during construction that the materials and workmanship meet required specifications. It was to accomplish this that United in Section B–23 designated its Engineer as its agent to inspect and indicate approval or disapproval of all materials and work, and who would have authority to direct the sequence of all work insofar as might be necessary for safe and proper progress and quality of the work.

 The testimony of three witnesses for Yuba at the trial of the principal action established that, from the beginning, Yuba undertook placement and maintenance of all flares, barricades, and other warning devices located at the scene of the accident. Yuba was the tortfeasor whose negligence was the proximate cause of the accident. In Louisiana, a joint tortfeasor who was actually at fault may be required to indemnify another joint tortfeasor who was only technically or constructively at fault. Travelers Insurance Company v. Busy Electric Co., 294 F.2d 139 (5 Cir. 1951); Appalachian Corporation, Inc., v. Brooklyn Cooperage Company, Inc., 151 La. 41, 91 So. 539 (1922); Cf. Northwestern Mutual Fire Association v. Allain, 226 La. 788, 77 So.2d 395 (1954).

 Fidelity's insured was only vicariously or technically at fault. It obtained the municipal permit and assumed the responsibility for safeguarding the public from dangers created by the pipeline construction. The duty owed the public was non-delegable. Even so, where a contract is made with another to perform that duty, and he performs

it negligently, he must indemnify the party who was only technically liable. Read v. United States, 201 F.2d 758 (3 Cir. 1953); D. M. Picton & Co. v. Eastes, 160 F.2d 189 (5 Cir. 1947); Cf. American Employers' Ins. Co. v. Gulf States Utilities Co., 4 So.2d 628 (La.App. 1st Cir. 1941). Yuba contracted to assume all the responsibilities of United toward the public under local ordinances; it undertook the actual construction of the pipeline; and its negligence resulted in the lack of proper safeguards to protect the public. Therefore, Fidelity is entitled to indemnity from Yuba for any portion of the judgment which Fidelity may be required to pay.

Yuba and its insurer urge that United Gas Corp. v. Guillory, 206 F.2d 49 (5 Cir. 1953) demands a contrary ruling, but in fact that case recognizes the rule we adopt. In Guillory, the third party plaintiff was not entitled to indemnity because it was actually at fault. Judge Rives, writing for the Court, stated at page 53:

" * * * In Louisiana, indemnity is restricted to cases where the actual fault is attributed to one of the parties and the other is only technically or constructively at fault. It is never applicable where both parties are actually in the wrong. [Cases cited.]"

Yuba subcontracted certain portions of the pipeline construction work to Dorlin P. Magouirk, d/b/a Southern Plumbing Company (Southern). Magouirk undertook clearing of the right-of-way and grading, ditching, backfilling and cleanup. He was the one who actually placed the dirt on the highway, after having placed as much of it as practicable off the highway between the ditch and a railroad spur.

In Section 3 of the Yuba-Southern Plumbing Company contract, the subcontractor obligated himself as follows:

"3. Subcontractor has read and is thoroughly familiar with said Contract Documents [the prime contract between United and Yuba] and agrees to be bound to Contractor by

the terms of said Contract Documents insofar as they relate in any part or in any way to the work undertaken herein, and to assume towards Contractor, in connection with the work covered by this subcontract, all of the obligations and responsibilities which Contractor by those documents assumes towards the Owner or anyone else."

Yuba contends that Southern contractually agreed to safeguard the public by proper use of flares and barricades, and that although each evening Yuba had its personnel set out flares and barricades to warn the public of the dirt excavated by Southern this was done for Southern and that Magouirk was negligent in not insuring that proper safety devices were used.

The subcontract did not specifically place a duty upon Southern to set out flares and barricades. Section 3 thereof did require it to assume certain obligations and responsibilities expressed in the contract between United and Yuba. At issue is whether the obligation for setting out flares and barricades was assumed by Southern.

Southern undertook certain work at the very beginning of the project, clearing the right-of-way and preparing the ditch, and, as stated, at the very end of the project it was to backfill and clean-up. In the meantime there were numerous items of work to be performed by Yuba. Southern contends that it clearly would not undertake to maintain flares and barricades during the entire course of the project. It argues that the most logical inference is that the placing of flares and barricades would be undertaken by Yuba who would be on the job continuously.

The broad provisions of the contract fail to reveal the exact intent of the parties. In such circumstances, L.S.A.–Civil Code, Art. 1956 directs: "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation." As noted, from the beginning, and until the accident, Yuba alone placed the flares and barricades. Thus, we think it is quite clear that, from the parties' own interpretation of the contract, this was not one of the obligations undertaken by Southern. Moreover, the subcontract was drafted by Yuba, and in case of ambiguity an interpretation against it is required.

Subcontract Sections 8(a) and 13 also have been specially considered by the court, but we likewise find that they do not place the duty upon Southern to maintain the flares and barricades around the pipeline construction site.

The provision of the subcontract which Yuba stresses most earnestly as entitling it to indemnity is Section 10(a):

"10. (a) Subcontractor agrees to save and indemnify and keep harmless the Owner and Contractor against all liability, claims, demands or judgments for damages to persons or property occasioned by Subcontractor, his agents or employees, including all claims or demands for damages to Subcontractor, his agents or employees, whether occasioned by Subcontractor or his employees or by Contractor or its employees, and will pay any judgments rendered in any such suits, and will reimburse and indemnify Contractor for all expenditures or expenses, including court costs and counsel fees, made or incurred by Contractor by reason thereof."

Yuba argues that by this Section Magouirk agreed to indemnify Yuba for any judgments which might be rendered against Yuba even if they resulted from Yuba's own negligence. Southern and its insurer, Marquette Casualty Co., cite United Gas Corporation v. Guillory, supra, as authority for holding that there can be no indemnity in this case. However, the Guillory case involved the matter of legal indemnity *vel non* between joint tortfeasors, and does not control where there is a contractual indemnity agreement.

■ In interpreting indemnity agreements, the controlling principle is set forth in Southern Bell Telephone & Telegraph Co. v. Mayor and Board of Aldermen, 74 F.2d 983, 984–985 (5 Cir. 1935): "It is well settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms [Cases cited.]" Likewise, under Louisiana law an intention to indemnify the indemnitee against his own negligence will not be presumed in the absence of a clear and specific stipulation to that effect. Dubuque Fire, etc., Co. v. Union Compress & Warehouse Co., 146 F.Supp. 482 (W.D. La.1956); Buford v. Sewerage & Water Board of New Orleans, 175 So. 110 (La. App.Orl.Cir. 1937).

■ A contract of indemnity constitutes the law between the parties and its terms will be enforced as written unless they run counter to law or violate well-defined public policy or good morals. L.S.A.–Civil Code Articles 1893 and 1895; Fidelity & Deposit Co. of Maryland v. Thieme, 193 So. 496 (La.App.2d Cir. 1940); Cf. Sandel & Lastrapes v. Shreveport, 129 So.2d 620 (La.App.1961). No Louisiana case has been cited, and none found in our independent research, containing a definitive statement of policy toward agreements purporting to indemnify the indemnitee against losses resulting from his own negligent acts. However, Buford, supra, makes it clear that such agreements are disfavored to the extent that they will not be enforced unless the terms of the agreement clearly require such interpretation.

■ Section 10(a) of the subcontract is subject to several conflicting interpretations. Countering Yuba's suggested interpretation, counsel for Magouirk argues most plausibly that "* * * a careful analytical examination of these provisions will result in the conclusion being reached that Southern Plumbing Company agreed to indemnify Yuba against (1) damages occasioned by Southern Plumbing Company or its employees; (2) damages that may be suffered by Southern Plumbing Company or its employees even though such damages may have been caused by Yuba or its employees. This interpretation is certainly confirmed by the provisions of Paragraph 10(b) wherein the insurance requirements of subcontractor are enumerated. It will be noted that subcontractor is required to carry 'liability insurance for its protection and the protection of the owner and contractor * * * covering damages * * * *occasioned by subcontractor* * * * in the performance of any of the work covered by this contract * * *.' There is no requirement that liability insurance be furnished covering damages occasioned by the contractor." This is sound reasoning, with which we are prone to agree.

However, we need not decide whether this interpretation is the one intended by the parties, but merely quote it to illustrate one of several conflicting interpretations. Section 10(a) does not provide in clear and specific language that Southern will indemnify Yuba for loss occasioned by Yuba's own negligence. Therefore, under Louisiana law the indemnity contract must be interpreted as *not* providing for such indemnity.

For the foregoing reasons, ultimate responsibility for the judgment rendered herein in favor of the original plaintiff rests upon Yuba Consolidated Industries, Inc., and its insurer, Insurance Company of North America. This ruling also necessarily disposes of the several other third-party actions filed herein.

The parties having stipulated that there are no genuine issues of material fact, the motions for summary judgment by Fidelity and Magouirk will be granted, and that by Yuba and its insurer will be denied.

A proper decree should be presented.