174 So.2d 682 (1965)
H. G. MOSES, Plaintiff-Appellee,
v.
COMMERCIAL STANDARD INSURANCE COMPANY et al., Defendant-Appellant.
No. 1388.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1965.
*683 Gahagan & Gahagan, by Marvin F. Gahagan, Natchitoches, for defendant-appellant.
John P. Godfrey, Many, for plaintiff-appellee.
Before TATE, FRUGE and SAVOY, JJ.
FRUGE, Judge.
Plaintiff, H. G. Moses, was injured while observing land-clearing operations being carried out for him by the defendant, W. R. Gandy, an independent contractor operating a bulldozer. Mr. Gandy's liability insurer, Commercial Standard Insurance Company, was joined as a party defendant to the suit. The district court rendered judgment for the plaintiff, and the defendants appeal. Plaintiff answered the appeal seeking an increase in the award.
Plaintiff, age 63, received serious injuries as a result of being struck by the top of a tree which was being pushed by the bulldozer operated by defendant Gandy. Plaintiff, immediately prior to the accident, had been standing near the operating bulldozer talking with Mr. Gandy's employee, Mr. Alton Lofton. The tree which struck plaintiff, about 40 to 50 feet in length, was being pushed ahead of the bulldozer and became lodged against a brush pile, causing the tree to bow. As the bulldozer moved forward, the tension of the bent tree was released and it sprang forward, striking the plaintiff on his right thigh and knocking him to the ground.
The plaintiff, H. G. Moses, testified that he and Lofton were standing near a large pile of debris pushed up by the bulldozer when he noticed that the tree being pushed by the bulldozer had lodged in some brush about twenty feet west of where they were standing. Seeing the danger, he warned Lofton and they ran for safety toward the south, their exits to the east and west being blocked respectively by the pile of debris and the bulldozer. Unable to get out of the way in time, Mr. Moses was struck by the treetop when it sprang forward.
Mr. Lofton testified that as the tree began to bow against the brush pile, Mr. Gandy, operating the bulldozer, stopped the bulldozer's forward progress by disengaging the gears and yelled a warning that Lofton and Moses should get out of the way. He testified that they did not run but rather walked at a fast pace to move from the area of danger. Lofton testified that Moses was following about ten feet behind him when Moses was struck by the treetop. He stated that Moses had slowed down and looked back over his shoulder, apparently showing concern for some beehives he had nearby. The treetop struck Moses, narrowly missing Lofton.
The defendant, Mr. Gandy, testified that he saw the dangerous position plaintiff was in and therefore stopped the machinery and disengaged the gears and "told him to get out of the way before he got hit." He then waited ten to fifteen seconds before proceeding forward with the bulldozer, thinking that plaintiff and Lofton had sufficient time to extricate themselves from their dangerous position. He stated that they didn't run but walked away, adding that plaintiff "poked off slow like."
*684 Mr. Gandy's view of the accident is perhaps best illustrated by the following testimony elicited on cross-examination:
"Q. In other words if he wanted to stay there and get hurtif he was more interested in his bees, he could just stay there and get hurt?
"A. That is the way it looked to me. I stopped momentarily, I would say at least fifteen seconds, and
"Q. So you waited fifteen seconds and you thought that was long enough so you engaged your
"A. How long would it take you to walk in fifteen seconds to safety?
"Q. The men were in your sight continuously, weren't they?
"A. Yes, sir."
It is thus shown, by defendant's own testimony, that although he realized the dangerous position plaintiff was in, he proceeded to move the bulldozer forward at a time when he was able to see that plaintiff had not yet reached a position of safety.
We are convinced that although plaintiff would have been wiser to observe the landclearing operations from a distance farther removed, at the time the accident occurred he was making every effort to remove himself from his precarious position. Conversely, Mr. Gandy, fully aware of the danger, proceeded to carry on the land-clearing work in disregard to the safety of plaintiff and his own employee, Lofton. By his own statement he had a clear field of vision and could see the plaintiff at all times immediately prior to the accident. His belief that plaintiff had ample time to extricate himself from danger was unwarranted.
Defendants contend that plaintiff assumed the risk of known dangers involved in land clearing work performed by heavy equipment. We think this argument, under the facts of this case, is without merit; for, as stated by this court in Bordelon v. Great American Indemnity Company, La.App. 3rd Cir., 124 So.2d 634, a person who places himself in a position of danger assumes only those risks which would ordinarily be incident to his precarious position and not those risks created by the unreasonable or imprudent operation of machinery by the defendant. We are of the opinion plaintiff did not assume the risk that Mr. Gandy would operate the bulldozer in the negligent manner herein described.
Should it be conceded that plaintiff was contributorily negligent in standing near the operating bulldozer, such contributory negligence would not in this case bar recovery due to the application of the doctrine of last clear chance.
For a party to successfully invoke the doctrine of last clear chance, he must establish three essential elements: (1) that the person invoking the doctrine was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that the person against whom the doctrine is invoked actually discovered or was in a position where he could and should have discovered such other person's peril; and (3) that at such time the person against whom the doctrine is invoked could have avoided the accident with the exercise of reasonable care. Scott v. Glazer, La.App. 4th Cir., 164 So.2d 185.
As to the first element, though aware of his peril, plaintiff has shown to our satisfaction that he was unable to extricate himself from his precarious position within the few seconds available. As pointed out previously, the testimony is conflicting as to the manner in which plaintiff and Lofton walked or ran from their position of danger. The preponderance of the testimony indicates, however, that they, at the least, walked at a brisk pace.
If defendant Mr. Gandy's testimony that he stopped the machinery and warned plaintiff *685 and Lofton is accepted, then it would appear that plaintiff acted reasonably in removing himself at a speed of less than a dead run, since plaintiff would reasonably believe that Mr. Gandy would allow adequate time for him to gain a position of safety before moving the bulldozer forward. On the other hand, should we accept plaintiff's testimony that he ran at his utmost speed, then we must likewise conclude that he was unable to extricate himself from his perilous position before the tension in the bowed tree was released.
There can be no serious contention that the second and third elements necessary for application of the doctrine of last clear chance were absent. Mr. Gandy, by his own testimony, clearly knew of plaintiff's peril and it is obvious that he could have avoided the accident by not driving the bulldozer forward until plaintiff was out of danger.
It is therefore our conclusion that the trial judge correctly determined that plaintiff's injuries were proximately caused by the negligent acts of defendant, Mr. Gandy, and that plaintiff was not barred from recovery by contributory negligence or assumption of risk.

Quantum
Plaintiff was injured on September 5, 1963. The force of the blow rendered him momentarily unconscious or semi-conscious. He was taken to the Allen Sanitarium at Converse, Louisiana, where he was treated by Dr. C. C. Griffin. He was not hospitalized.
The medical evidence in the record is limited to the written reports of Dr. R. D. Hightower, plaintiff's treating orthopedic surgeon, and Dr. Ray E. King, an orthopedic surgeon examining on behalf of defendants. Plaintiff's treating physician, Dr. Griffin, could not be located and a stipulation was entered agreeing that the failure to secure his testimony should not create an adverse inference against either party.
Dr. Hightower first examined Mr. Moses on November 13, 1963, at which time he was of the opinion that plaintiff had suffered contusions to the right thigh and calf and a "hyperextension type injury to the right knee with resultant stretch or strain to the hamstring tendons and posterior capsule structures of the joint." At the time of this examination, plaintiff's injuries appeared to be progressing satisfactorily. Dr. Hightower prescribed and fitted plaintiff with a brace for his right knee.
After subsequent examinations, Dr. Hightower was of the opinion that the injury to plaintiff's knee was of a permanent nature and that plaintiff had suffered an aggravation to an arthritic condition in his back. Based on this prognosis, he assigned Mr. Moses a ten per cent permanent disability of the body as a whole.
Dr. King examined plaintiff on August 4, 1964. He was of the opinion that plaintiff had received a severe contusion to the lateral side of the right thigh and sprain of the knee. Although he found the knee to be symptomatic, he stated there was "no definite objective evidence of residual disability except for patient's subjective symptoms." Dr. King doubted that any back injury that plaintiff might have was due to the accident of September 5, 1963.
Plaintiff testified that after the accident he was confined to his bed for approximately two weeks. He has continued to wear the knee brace since it was first prescribed by Dr. Hightower. He complained of pain to his leg and back. Mr. Moses stated that even with the brace on his knee, he had on several occasions fallen when his knee gave way. His testimony was corroborated by that of his wife.
The trial judge awarded plaintiff $4,500.00 for his personal injuries, together with special damages of $780.00 for loss of earnings, and medical expenses of $200.75. The special damages do not appear to be contested, *686 the amount awarded being supported by the evidence in the record. As to the amount granted for personal injuries, defendants contend that it is excessive and plaintiff answers the appeal praying that it be increased.
After studying the testimony and medical reports in the record, we are unable to say that the amount awarded by the trial court for plaintiff's personal injuries in the amount of $4,500.00 was either excessive or inadequate.
Therefore, for the reasons stated in this opinion, the judgment is affirmed. Defendants shall bear the cost of this appeal.
Affirmed.