John Wallace CELESTIN, Appellant,

v.

EMPLOYERS MUTUAL LIABILITY IN-
SURANCE COMPANY OF WIS-
CONSIN, Appellee.

No. 23092.

United States Court of Appeals
Fifth Circuit.

Jan. 3, 1968.

J. St. Clair Favrot, Baton Rouge, La.,
for appellant.

Robert J. Vandaworker, Baton Rouge,
La., for appellee.

Before RIVES and WISDOM, Circuit
Judges, and CONNALLY, District
Judge.

WISDOM, Circuit Judge:

The plaintiff-appellant, John Wallace
Celestin, was a tree-cutter. In April
1963 he rented a 40-foot aluminum ex-
tension ladder from the American Rent
All Company of Baton Rouge, Louisiana.
The printed "Rental Agreement" he
signed contained the following exculpa-
tory clause:

> "The lessor makes no warranty of any
> kind on said equipment and the lessee
> agrees to immediately return any leas-
> ed equipment which develops indica-
> tion of defect or improper working
> condition: that the lessee agrees to use
> said equipment entirely at his own
> risk, to be liable for any damage to
> persons or property resulting directly
> or indirectly from the use thereof and
> the lessee further agrees to protect
> and save harmless the lessor, its
> agents, servants and employees from
> any and all liability resulting from the
> operation or use of the above rented
> equipment: that the lessee shall pay all
> rental fees due the lessor under this
> agreement at the time equipment is
> returned."

The next day Celestin fell headfirst to
the ground, sustaining severe injuries,
when the ladder telescoped while he was
standing near the top of its extended
section. In this diversity action against
Employers Mutual Liability Insurance
Company, the lessor's liability insurer,
he alleged that the ladder was defective.
The defendant denies that the ladder was
defective, asserts that the plaintiff's in-
jury was caused by his negligent use of
the ladder, and stands on the exculpatory
clause.

After a trial and after the district
judge gave full instructions, the jury re-
turned a general verdict for the defend-
ant. We do not know therefore whether
the jury found (1) that the ladder was

not defective [1] or (2) that Celestin used it negligently or (3) that the rental agreement absolved the lessor of liability. On appeal, the case has shaken down to whether the exculpatory clause violates the public policy of Louisiana. The plaintiff contends that the trial judge erred in refusing to instruct the jury that the guarantees of the lessor against the defects of the ladder, a dangerous movable, can not be waived by agreement with the lessee. We affirm.

\* \* \*

The alleged liability rests on the lessor's warranty to the lessee set forth in Article 2695 of the Revised Code of Louisiana:

"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same." LSA–C.C. art. 2695.

Absent an effective waiver, this warranty must be read into Celestin's rental agreement with American Rent All. Article 11 of the Code, however, allows waiver when it is not against public policy:

"Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.

But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good." LSA–C.C. art. 11.

The parties have not cited and our research has failed to disclose any Louisiana case on all fours with the instant case, that is, one involving an exculpatory clause in the lease of a movable.

Celestin relies heavily on Sandel & Lastrapes v. City of Shreveport, La.App. 2 Cir. 1961, 129 So.2d 620, 624. In its opinion the Second Circuit Court of Appeal stated, "It is contrary to public policy to allow a contractee to stipulate exemption from negligent acts which cause injury." But the court did not support this statement by any authority. *Sandel & Lastrapes* involved a suit for damages on a contract requiring the city (the owner) to furnish the contractor a certain kind of pipe to be installed in the city's sewerage system. The contract provided that the Contractor would have to accept the risk of any delays in delivery of equipment to be furnished by the owner. The owner failed to make timely delivery of the pipe, causing the construction period to be extended 272 days. The court declined to allow damages occasioned by the delay. The case turned, however, on the court's interpretation of the contract: the exculpatory provision did not apply in the circumstances of that particular case. The court found that the provision applied to delays in delivery of "equipment", not to delays in delivery of pipe which should be considered as "material"; the provi-

1. The defendant did not concede that there was a defect of any kind in the rented ladder. During the trial, the jury actually had an opportunity to examine the ladder rented by the plaintiff and observe its use. Twice during the trial the jury left the courtroom for this purpose. The plaintiff raised a collateral issue as to the identification of the ladder. Judge West referred to this as follows:
"Now, to state this case very simply, this is a case of a man who paid four dollars and twelve cents to rent a lad-

der. He rented the ladder from the defendant's assured, the American Rent-All Company. He says that he fell because the ladder telescoped or collapsed and he says that it collapsed because there was something wrong with the ladder. And you have seen a ladder. First of all, you must resolve the dispute as to whether or not that is the ladder that collapsed. That is for you to decide. You saw the ladder, you have heard the testimony, you have seen the pictures."

sion was "intended to be operative where the delay is not caused by the owner".

Celestin also relies on Mills v. Fidelity & Casualty of New York, D.Ct.La.1964, 226 F.Supp. 786. In *Mills* Judge Dawkins stated: "Under Louisiana law an intention to indemnify the indemnitee against his own negligence will not be presumed in the absence of a clear and specific stipulation to that effect. * * No Louisiana case has been cited, and none found in our independent research, containing a definitive statement of policy toward agreements purporting to indemnify the indemnitee against losses resulting from his own negligent acts. However, * * * such agreements are disfavored to the extent that they will not be enforced unless the terms of the agreement clearly require such interpretation." The total effect of that case, however, is that indemnity agreements must be strictly construed. Judge Dawkins did not hold, nor has any Louisiana court held, that a lessee's contractual assumption of the risk of injury is "contrary to the public good".

The insurer relies heavily on Forsyth v. Jefferson Downs, Inc., La.App. 4 Cir. 1962, 152 S.2d 369, cert. denied, 1963, 244 La. 895, 154 So.2d 767. In that case a race track was being repaired during the off season. Racehorse owners who wished to use the track to exercise their horses in spite of the construction work were required to sign a statement that they would do so at their own risk and would not hold the track liable for any injuries. The court of appeals, on rehearing held that this waiver barred recovery when a horse was injured as a result of a break in the rail caused by the construction work. The Court said: "The validity of the agreement, per se, is not an issue here and it will serve no purpose to discuss it, however, under LSA–CC Art. 11 it is not in contravention of public policy for a party to assume the risk of injuring himself or his property in consideration for his being allowed to use the premises of a race track." But in that case the risk was apparent and known to the contracting parties.

█ Article 2695 applies to both movables and immovables. Lyons v. Jahncke Service, Inc., La.App.1960, 125 So. 2d 619, 626.[2] Turning to Louisiana cases involving leases of immovable property, we find that it is lawful to stipulate in a lease that the lessor shall not be responsible for damages caused by any vice or defect of the leased property. Pecararo v. Grover, 1927, 5 La.App. 676; Grundmann v. Trocchiano, 1929, 13 La. App. 277, 125 So. 171, affirmed on rehearing, 13 La.App. 277, 127 So. 748; Klein v. Young, 1926, 163 La. 59, 111 So. 495 (dicta); Clay v. Parsons, 1919, 144 La. 985, 81 So. 597; Pierce v. Hedden, 1901, 105 La. 294, 29 So. 734. In *Pecararo*, the court held that an exculpatory clause in a lease relieved the lessor of liability to his lessee for an injury received from falling plaster. In that case Judge Claiborne, well versed in the civil law, quoted from 30 Dalloz Rep., No. 28, 29, 57, on Article 1721 of the Code Napoleon (1804), on which Article 2695 of the Louisiana Code is based. In Pierce v. Hedden, the court, citing 3 Pothier, Louage, S. 114, p. 283, said: "The parties to a lease have the right, as have the parties to a sale, to broaden or restrict their respective rights and obligations as to warranty by a clause in their contract."

In Klein v. Young, 1926, 163 La. 59, 111 So. 495, the court held that while such a stipulation may be effective as between the lessor and lessee, it can not avoid the lessor's obligation to third persons for negligence. To overcome the effect of this holding, the Louisiana legislature enacted Act 174 of 1932, La.

---

**2.** "We hold therefore that Articles 2692–2695 apply equally to contracts for the lease or bailment of movable property as well as to leases of immovable property and confer upon the bailor and bailee of movables the same respective rights, obligations and duties which arise from agreements to lease real property."

**542**

R.S. 9:3221 (1950).[3] This statute permits a lessor to shift to the lessee liability to third persons for an injury occurring on the leased premises. See Comment, The Louisiana Law of Lease, 30 Tul.L.Rev. 798, 846–50 (1965). Enactment of this statute strongly indicates that there is no public policy in Louisiana against a lessor's stipulating against liability or against the lessee's assumption of the lessor's liability. See Comment, 20 La.L.Rev. 76 (1959).

These cases did not involve movables, but if we examine Louisiana cases on bailment we find that the bailee may limit his liability for damage to or loss of the article bailed, even if caused by the bailee's negligence, provided, of course, that the limitation is part of a contract agreed to by the bailor, and not simply, for example, fine print on the back of a receipt. See Le Blanc v. Hester, 44 So.2d 219 (La.App.1950); Colgin v. Security Storage & Van Co., 208 La. 172, 23 So.2d 36, 160 A.L.R. 1107 (1945). The analogy is strengthened by the fact that article 2938 expressly establishes the duty of a bailor for hire or "compensated depositary" to exercise care in his handling of the goods deposited, and would control absent an effective waiver.

Making an *Erie*-educated guess and considering analogies, as a Louisiana court is required to do when there is no express codal authority, we hold that the district judge correctly instructed the jury that, if the jury found the waiver in the rental agreement to have been part of the agreed contract,[4] it should be considered as having relieved the rental

company of responsibility for Celestin's injuries.

We have considered the appellant's other objections to the trial court's instructions. We find them without merit.

The judgment is

Affirmed.

---

3. "R.S. 9:3221 Assumption of responsibility by lessee; liability of owner. The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless * * *."

4. The trial judge instructed the jury: "[Y]ou must decide whether or not by contract entered into between the parties

and in accordance with these instructions that the lessor was released from his obligation to rent a piece of equipment reasonably fit for the purpose for which it was intended. In other words, he can by contract say 'You take this as is, where it is, and if anything happens it is your responsibility, not mine.' But that must be done by contract properly entered into in order to circumvent the liability imposed by the Civil Code ordinarily on a lessor. * * *"