DIAMOND CRYSTAL SALT COMPANY
and Liberty Mutual Insurance
Company, Appellants,

v.

Grace Verret THIELMAN, Appellee.

No. 24863.

United States Court of Appeals
Fifth Circuit.

May 10, 1968.

Rehearing Denied June 20, 1968.

Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for defendants-appellants.

Anthony J. Clesi, Jr., of Gordon & Clesi, Baton Rouge, La., for plaintiff-appellee.

Before COLEMAN and CLAYTON, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge:

Diamond Crystal Salt Company and its liability insurer, Liberty Mutual Insurance Company, appeal from a judgment entered on a jury verdict in favor of Mrs. Grace Verret Thielman. Mrs. Thielman's action was for the recovery of damages for her own personal injuries and for the wrongful death of her husband, which occurred while she and her husband were on a guided tour of the underground mine of the appellant Diamond Crystal Salt Company near New Iberia, Louisiana.

The appellant Diamond Crystal Salt Company required the Thielmans, who were nonpaying visitors, to execute separate releases[1] before taking the tour on March 9, 1964. During the trial of the case when the "release defense" was first presented, the District Court, on its own motion, instructed the jury that "it is against the public policy of the State of Louisiana for a person to be permitted to release someone in advance for any acts of negligence which they might later be guilty of." The sole question[2] presented on this appeal is the correctness of that ruling.

Salt mines are tourist attractions in Louisiana. On the date of the accident, Mr. and Mrs. Thielman, neither of whom had any connection with the Diamond Crystal Salt Company, were on vacation in the vicinity of the mine in question. They arrived prior to the advertised time of a scheduled tour and separate releases were executed for both Mr. and Mrs. Thielman. After the tour began, and while Mr. and Mrs. Thielman were in a portion of the mine which the salt company authorized them to enter in the company of a tour guide, a portion of the roof at the 1,000-foot level of the mine caved in killing Mr. Thielman instantly and seriously injuring Mrs. Thielman.

The accident occurred in a room with a 90-foot ceiling through the collapse of a "fault" in the salt. The appellant Diamond Crystal Salt Company had known of the existence of the "fault" for some time prior to the accident, knew that it was dangerous, and could have prevented the collapse. The "fault" was not, however, visible to anyone standing on the floor of the mine, and, had it been observed, its dangerous nature would not have been obvious to a person not experienced in such an operation.

Louisiana organic law allows an individual to contract concerning liability for negligence in all cases where such a contract is not contrary to public policy.[3] Celestin v. Employers Mutual Li-

1. The "Release" read in pertinent part as follows:

"In consideration of Diamond Crystal Salt Co. consenting to my inspection of its Mine and/or Plant, and/or of its furnishing me with a guide for the purpose of making such tour of inspection, the undersigned hereby assumes all risks of accident incident to such tour, and hereby releases and discharges the company and its employees, and all persons for whom the company may be legally responsible, from all claims, liabilities or demands for or on account of personal injuries or other damages sustained while in the plant or on the property of the company and caused by the negligence of said company or any of its employees, or any person for whom the company may be legally responsible."

2. For the first time on this appeal appellee argues as a basis of affirmance that the alleged exculpatory contract was invalid for lack of consideration. See Gray v. Foundation Co., 151 La. 7, 91 So. 527 (1922). For the reasons hereinafter appearing, we do not deal with this question.

3. Article 11 of the Civil Code of Louisiana provides that:

"Individuals can not by their conventions, derogate from the force of laws

ability Insurance Co. of Wisconsin, 387 F.2d 539 (5th Cir. 1968). Only three Louisiana cases appear material to the public policy question here presented.[4] The broad principle of Louisiana law involved is stated in Sandel & Lastrapes v. City of Shreveport, 129 So.2d 620, 624 (La.App., 2d Cir., 1961):

"It is contrary to public policy to allow a contractee to stipulate exemption from negligent acts which cause injury."

That case, however, dealt with a construction contract rather than with an exemption from liability for personal injuries.[5]

The only Louisiana case dealing with an exemption from liability for personal injuries is Forsyth v. Jefferson Downs, Inc., 152 So.2d 369, 375 (La.App., 4th Cir. 1962), writ refused 244 La. 895, 154 So.2d 767 (1963):

"The validity of the agreement, per se, is not an issue here and it will serve no purpose to discuss it, however, under LSA–C.C. Art. 11 it is not in contravention of public policy for a party to assume the risk of injuring himself or his property in consideration for his being allowed to use the premises of a race track."

In that case, a race track was undergoing repairs during the off season and horsemen who regularly kept their animals stabled on the premises were forbidden to use the track. As a condition to being allowed to use the track for training purposes, the plaintiff was one of ten horsemen who entered into a written agreement providing that "our horses are exercising or training on the race track at our own risk and that any injury to the exercise boy, jockey, or trainer or any injury to the horses will be at our own risk * * *." A horse was fatally injured when it swerved into an area where the interior rail had been removed as a result of the construction work. This danger was obvious and known to all parties to the agreement.

The third case in which Louisiana public policy has been considered is Celestin v. Employers Mutual Life Insurance Company of Wisconsin, supra. That case dealt with "an exculpatory clause in the lease of a movable." Celestin had rented an extension ladder and was injured when it collapsed. The "rental agreement" which he signed provided that "the lessee agrees to use said equipment entirely at his own risk" and further provided that the lessee would indemnify the lessor for any liability occasioned by the use of the property. Leases are subject to special statutory treatment in Louisiana.[6] After considering the effect of the statutes applicable to leases, the Court concluded that nothing in the statute law or public

---

made for the preservation of public order or good morals.

"But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."

4. The law of other jurisdictions sheds almost no light by comparison on the public policy of Louisiana because of the disparate rules adopted in other jurisdictions. See, Annot., 175 A.L.R. 8 (1948) for an exhaustive treatment of the earlier cases. Compare 17 Am.Jur.2d Contracts § 188 (1964) and 38 Am.Jur. Negligence § 8 (1941, supp. 1967) with 45 Am.Jur.

Release §§ 17, 31 (1943, supp. 1967); 17 C.J.S. Contracts § 262 at n. 84 (1963) with 65A C.J.S. Negligence § 181 (1966). See 6A Corbin, Contracts § 1472 (1962). Cf. Annot., 8 A.L.R.3d 1393 (1966).

5. This fact has caused some difficulty in later Louisiana cases. See e. g., Jennings v. Ralston Purina Company, 201 So.2d 168 (La.App., 2d Cir., 1967), where Sandel was distinguished and held inapplicable to an indemnity agreement. See Freeman v. Department of Highways, 197 So.2d 188, 198–199 (La.App., 1st Cir. 1967).

6. LSA–C.C. Arts. 2692–2695, LSA–R.S. 9:3221. See Comment, The Louisiana Law of Lease, 30 Tul.L.Rev. 798 (1965).

policy of the State of Louisiana forbade the waiver in that case and that a jury question was presented as to whether the waiver was a part of the agreed contract.

■ Thus, the only two Louisiana cases dealing with the question now presented and involving personal injuries have upheld exculpatory provisions dealing with assumption of the risk. However, these two cases concerned factual situations where either the dangerous condition was both obvious and known to both parties or where the instrumentality causing harm was in the exclusive possession and control of the person injured. In such a state of authorities, the opinion of the trial judge must be accorded great weight.[7]

■■ It is clear that Louisiana public policy disfavors similar agreements involving indemnity to the extent of requiring that they be strictly construed,[8] and an agreement purporting to prospectively relieve another of liability for an intentional tort is void even though it may not involve corporal injury. Hayes v. Hayes, 8 La.Ann. 468 (1852). Appellants seek to compare the "release" here involved to a contract of liability insurance. There is obviously no comparison. The law allows one to purchase liability insurance as a matter of sound public policy. Such insurance is a contract of indemnity whereby a person may be indemnified for liability arising from his own negligence. The first and most obvious distinction is that such contracts involve the legal relations of three persons rather than just two. The significant distinction, however, is that such contracts attempt to guarantee that the person injured as a proximate result of the negligence of the insured will be compensated for such injuries, whereas enforcement of the contract in the instant case would have just the opposite result of denying an injured person the right to be compensated for injuries proximately caused by another's negligence.

■ There is clearly a distinction between holding that public policy forbids a contract whereby an attempt is made to prospectively absolve one of· liability for injuries negligently caused through instrumentalities in his exclusive control and holding that public policy allows a contract whereby one agrees to assume the risk of injuring himself when he is apprised of the nature of a dangerous condition and voluntarily continues to act. It is fundamental that in order to assume a risk, the dangerous condition must be one which is obvious to a person exercising ordinary care for his own safety.[9] The risk and danger must be seen, understood, and appreciated before a risk may be legally assumed.[10] In this case, the danger was not obvious, and if the dangerous condition had in fact been observed it would not have been appreciated by persons of ordinary understanding. No warning was given concerning the existence of the "fault."[11]

7. Delduca v. United States Fidelity & Guaranty Company, 357 F.2d 204 (5th Cir. 1966), rehearing denied 362 F.2d 1012 (1966) ; Sudderth v. National Lead Co., 272 F.2d 259 (5th Cir. 1959).

8. Mills v. Fidelity & Casualty Company of New York, 226 F.Supp. 786, 790 (W.D. La.1964), and cases there cited.

9. Meek v. Travelers Insurance Company, 188 So.2d 677 (La.App., 4th Cir., 1966) ; Moses v. Commercial Standard Insurance Co., 174 So.2d 682 (La.App., 3d Cir. 1965) ; Fradger v. Shaffer-Stein Corp., 73 So.2d 612 (La.App., 2d Cir., 1954) ; Regenbogen v. Southern Ship-

wrecking Co., 41 So.2d 110 (La.App., Orl.Cir. 1949).

10. Peeples v. Dobson, Maryland Cas. Co. etc., 99 So.2d 161 (La.App., 2d Cir., 1958).

11. It is clear that operators of mines are under a duty to warn those lawfully on their premises of inherent, concealed or latent defects in the premises which are known to the operator but which are not obvious to men of ordinary knowledge. Despite the absence of a warning, however, mine operators would not be liable for injuries resulting from an obvious condition or one which should have been observed in the exercise of ordinary care.

■ Mr. and Mrs. Thielman had no knowledge of the existence of the "fault" in the ceiling of the salt mine, and, even had it been obvious, the danger could not have been understood so as to result in an assumption of the risk. The cause of the injury in this case was within the exclusive control of the mine operators and only they had knowledge of the danger. These circumstances clearly distinguish this case from *Celestin* and *Forsyth,* supra, so as to bring it squarely within the general rule of *Sandel & Lastrapes.*

Affirmed.

Compare Gulf Oil Corporation v. Bivins, 276 F.2d 753 (5th Cir. 1960), cert. denied 364 U.S. 835, 81 S.Ct. 70, 5 L.Ed.2d 61 (1960), rehearing denied 364 U.S. 906, 81 S.Ct. 231, 5 L.Ed.2d 1991 (1960) with Green v. Reynolds Metal Company, 328 F.2d 372 (5th Cir. 1964).