HOOD, Judge.
Mr. and Mrs. Detroit M. Sittig instituted this action for damages for the wrongful death of their 16 year old son, Steven Sittig, who was killed when a motor scooter on which he was riding was struck by an automobile being driven by Harvey J. Trahan. The defendants are Trahan and his liability insurer, Allstate Insurance Company. The case was tried by jury, with the result that a general verdict was rendered in favor of defendants. Judgment was rendered in accordance with that verdict, and plaintiffs have appealed.
The issues presented on this appeal are: (1) Was Trahan negligent, and if so, was his negligence a proximate cause of the accident? (2) Are plaintiffs barred from recovery by the contributory negligence of the decedent? and (3) Did Trahan have the last clear chance to avoid the accident?
The accident occurred at about 7:30 p. m. on February 20, 1963, on Louisiana Highway 13, which is the principal thoroughfare between Eunice and Crowley. The highway at that point is a straight, level, two-lane, blacktopped road, which runs north and south, the asphalt pavement being 24 feet wide. The road was in good condition at the time of the accident, it having been improved shortly before that time, and there were wide, smooth shoulders on both sides of the pavement. It was dark at the time of the collision, but the weather was clear, the road was dry and visibility was good.
Plaintiffs’ residence is located on the east side of and adjacent to this highway. A private driveway leads from the home-place to the highway. Barricades had been constructed across both shoulders of this highway at a point 280 feet north of the Sittig driveway, and these barricades were in place at the time the accident occurred. Each of these barricades extended from the edge of the pavement, across the shoulder of the highway and into the ditch which ran along the side of the roadbed. The main traveled portion of the highway was not barricaded. The barricade on the east shoulder prevented a vehicle traveling north on that shoulder from continuing beyond that point on the shoulder, but the vehicle could continue to travel north by driving onto the pavement and going around the barricade.
Shortly before the collision occurred young Sittig drove his motor scooter out of the driveway of his parents’ home, turned to his right and proceeded to travel north toward Eunice at a speed of about 20 miles per hour. When he reached a point 223 feet north of the driveway, which point is also 57 feet south of the barricade, his scooter was struck by the Trahan automobile, which also was traveling north on the highway. The force of the blow caused the scooter and its rider to be knocked in a northerly direction, through the barricade on the east shoulder of the highway, and to come to rest at a point about 33 feet north of the barricade. Young Sittig was killed almost instantly in this accident.
The point of impact was in the northbound traffic lane of the highway, about three feet from the east edge of the asphalt pavement. Plaintiffs contend that the *694 scooter remained on the pavement from the time it left the driveway until the time of the accident, that the headlight and taillight of the scooter were burning, and that it was struck in the rear by the Trahan automobile. Defendants contend that after leaving the driveway the decedent traveled north on the east shoulder of the highway until he reached a point within 10 or 20 feet of the place where the collision occurred, that he then turned his scooter suddenly to his left directly in front of the Trahan car, that there were no lights on the scooter at that time, that the scooter was traveling in a northwesterly direction when the accident occurred, and that the automobile struck the left side of the scooter.
Trahan was driving at a speed of from 50 to 55 miles per hour as he approached the point where the accident occurred. He observed the scooter for the first time when it was from 10 to 20 feet ahead of him. He applied his brakes immediately, but was unable to avoid an accident. The automobile skidded a distance of 167 feet on the highway immediately after it collided with the scooter. Another automobile, being driven by Mrs. Verna B. Andrus, was approaching from the north, and the accident occurred shortly before she reached the point where the scooter was struck. Mrs. Andrus and Trahan dimmed their headlights when they were several hundred feet apart, and Trahan testified that the headlights of the Andrus car did not blind him.
In spite of plaintiffs’ arguments to the contrary, we find that defendant Trahan was not under the influence of intoxicating liquors at the time the accident occurred, and that he was not so exhausted or drowsy as to make it impossible or difficult for him to maintain a proper lookout. The evidence fails to establish that he was negligent in either of these alleged particulars.
The testimony is conflicting as to whether the lights of the scooter were burning at the time the accident occurred, and as to whether the decedent caused his scooter to turn sharply to the left from the east shoulder of the highway onto the pavement directly in the path of the oncoming Trahan automobile.
The grandmother of the decedent saw him leave the driveway of his parents’ home. She testified that at that time the decedent drove onto the highway and that he was traveling on the pavement when she last saw him a few feet after he left the driveway. Young Sittig’s mother was watching the scooter through a window in her home when the accident occurred, and she testified also that the headlight and taillight were burning. She was unable to determine, however, whether the scooter was on the pavement or on the shoulder as it traveled from the driveway to the place where it was struck.
Trahan testified that he saw no lights on the scooter at any time, that when he first observed it the back of the scooter was one or two feet from the east edge of the pavement, that the scooter then was traveling at an angle toward the west side of the highway, and that his car struck the “middle part” of the scooter. With reference to the position of the scooter when first observed, Trahan stated that “this boy was at an angle,” that “the front [of the scooter] was pointing sort of north * * * more or less north into the other lane of traffic —say at this angle here (indicating on sketch),” and that “it was right at an angle and he was in motion in the highway.” The defendant reasoned that “ * * * the boy comes out of that highway driving down the shoulder of that road. He knows he can’t pass because of that barricade ahead, he whips out all of a sudden into my lane of traffic, well, then, naturally I see him.”
Skid marks made by the tires of the scooter when it was struck show that the scooter at that time was facing in a northwesterly direction, the front wheel of the *695 scooter being about one foot nearer the center of the highway than was the rear wheel.
Mrs. Andrus, who was driving a southbound car and was about one block from the scene when the scooter was struck, testified that she did not see the scooter at all before the accident occurred, that she and Trahan dimmed the lights of their respective cars several hundred feet before they met, that she saw no light of any kind where the scooter had been, and that she thinks she would have seen a headlight on the scooter before the accident occurred if a headlight actually had been burning.
Several of the decedent’s relatives, including his father and his brother, testified that the lights on the scooter were in operating condition shortly before the accident occurred, that the taillight was wired in such a way that it was always on when the motor was running, and that after the accident the headlights switch on the wrecked scooter was found to be in an “on” position.
We examined the wrecked scooter, as did the jury, but we were unable to determine from that examination what part of the machine was actually struck by the automobile. We did find, as contended by defendant, that the left side of the scooter was damaged extensively, and we agree that this physical finding is consistent with defendants’ version of the facts. We concede, however, that from this examination alone we are unable to rule out the possibility that the scooter could have been struck from the rear, as contended by plaintiffs.
We believe that Mrs. Andrus would have seen the scooter before the accident if it had been traveling on the pavement from the driveway to the place where the accident occurred, as contended by plaintiffs. She, of course, would have seen the headlight of that vehicle if it had been burning, since the headlight would have been shining directly toward her. But, assuming that the headlight was not burning, it seems to us that Mrs. Andrus nevertheless would have observed the decedent and the scooter silhouetted against the lights of the Trahan car. The fact that she did not observe the scooter at all before the collision occurred, indicates to us that the headlight of that vehicle was not on, and that the scooter did not travel on the pavement until a moment before the accident.
The evidence establishes that the scooter was traveling in a northwesterly direction and that the back of it was only one or two feet from the east edge of the pavement when the accident occurred. Since it was facing in that direction, there can be no question but that the scooter had been turned to its left sometime before it was struck. And, the fact that the back of the scooter was so close to the east edge of the pavement when the turn was begun, together with the fact that it was traveling in a northwesterly direction at a speed of about 20 miles per hour, indicates to us that the left turn was made while the scooter was on the shoulder of the highway.
As we have already noted, the east shoulder of the highway was smooth and it thus was suitable, and perhaps safer than the pavement, for use by the operator of a scooter. Defendants’ argument is not unreasonable, therefore, that the scooter traveled a part of the distance on the shoulder, particularly since two cars were approaching from different directions and they would have met and passed each other very near the place where the scooter would have been. The existing barricade made it necessary, however, for the operator of a vehicle on the shoulder to drive onto the highway in order to go around that obstruction. This accident occurred 57 feet before the decedent would have reached the barricade and we think it is significant that that is somewhere near the place where the operator of a vehicle on the shoulder ordinarily might be expected to turn and drive onto the pavement in order to go around the barricade ahead of him.
*696 Since a verdict was rendered in favor of defendants, the jury obviously concluded either that defendant Trahan was free from negligence, or that the operator of the scooter also was negligent and that defendant did not have the last clear chance to avoid the accident. Under our jurisprudence, the reviewing court will not set aside the verdict of a jury in a case where the testimony is conflicting, when the testimony of the witnesses, if accepted as being credible, is sufficient to sustain the verdict. Begnaud v. Texas & New Orleans Railroad Company, 136 So.2d 123 (La.App. 3d Cir. 1962); Davis v. Bankston, 192 So.2d 614 (La.App. 3d Cir. 1966).
Our review of the evidence convinces us that immediately before the collision occurred the decedent, Steven Sittig, was riding his scooter north on the shoulder of the highway, and that he continued to travel on the shoulder until he reached a point within a few feet of the place where the accident occurred. Upon reaching that point, we find that he turned the scooter to his left, causing it to travel in a northwesterly direction and to go onto the pavement, directly in the path of the oncoming Trahan automobile. The evidence convinces us that Trahan could not have avoided the accident after this sudden left turn was made.
Our conclusion is that the decedent was negligent in making this sudden left turn when it was unsafe for him to do so, and that his negligence in that respect was a proximate and contributing cause of the accident, barring plaintiffs from recovering.
Since we have determined that plaintiffs are barred from recovery by the decedent’s contributory negligence, it is unnecessary for us to consider or determine whether defendant Trahan also was negligent. In that connection, we observe here that it is immaterial to the outcome of this case whether the lights of the scooter were burning immediately before the accident occurred. The factual issue of whether the taillight of the scooter was on may have been material in determining whether Trahan was negligent in failing to maintain better control over his car as he overtook the smaller vehicle, but the fact that the lights on the scooter were burning would not absolve the decedent from his contributory negligence in making a sudden left turn. Plaintiffs would be barred from recovery by the decedent’s contributory negligence, even if we assume that the lights on the scooter were burning and that defendant Trahan was negligent in failing to maintain better control over his automobile.
It also is immaterial whether defendant Trahan was exceeding the posted speed limit as he approached the place where the accident occurred. The decedent would not be absolved from contributory negligence even if we should assume that Trahan was driving at a speed in excess of the speed limit.
We find no merit to plaintiffs’ argument that defendant Trahan had the last clear chance to avoid the accident. A litigant relying on the doctrine of last clear chance has the burden of proving all facts and circumstances essential to its application. Franicevich v. Lirette, 241 La. 466, 129 So.2d 740 (1961); Scott v. Glazer, 164 So.2d 185 (La.App. 4th Cir. 1964). Before the doctrine can be successfully invoked, three essential facts must be established: (1) That the person invoking the doctrine was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that the person against whom the doctrine is sought to be invoked actually discovered or was in such a position that he should have discovered the other person’s peril; and (3) that at such time the person against whom the doctrine is being invoked could have avoided the accident with the exercise of reasonable care. Lavigne v. Southern Farm Bureau Casualty Insurance Company, 125 So.2d 430 (La.App. 3d Cir. 1960); Moses v. Commercial Standard Insurance *697 Company, 174 So.2d 682 (La.App. 3d Cir. 1965).
In the instant suit we have concluded that defendant Trahan discovered the decedent’s peril as soon as it was possible for him to do so. After making that discovery, however, it was impossible for him to avoid the accident. The last element of proof which is required before the doctrine of last clear chance can be invoked, therefore, is not present.
We are mindful of the tragic nature of this accident. We cannot say, however, that the jury erred in rendering a verdict for defendants, or that the trial judge erred in rendering judgment in accordance with that verdict.
For these reasons the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.