HOOD, Judge.
Vernon Prudhomme, individually and as administrator of the estate of his minor son, James C. Prudhomme, instituted this suit for damages for personal injuries sustained by his son when a motorcycle *39 being operated by young Prudhomme collided with a pick-up truck being driven by Roy Woodson. The suit was instituted against Woodson and his liability insurer, Houston Fire & Casualty Insurance Company. Judgment was rendered by the trial court in favor of defendants, and plaintiff has appealed.
The issues are: (1) Was Woodson negligent, and if so, was his negligence a proximate cause of the accident? (2) Is plaintiff barred from recovery by the contributory negligence of James C. Prudhomme? (3) Did Woodson have the last clear chance to avoid the accident?
The accident occurred at about 3:00 P.M. on June IS, 1968, on Louisiana Highway 754, at a point approximately two-tenths of a mile north of the intersection of that highway with Louisiana Highway 95. The road at or near the scene of the accident is a straight, level, two lane, black-topped thoroughfare, which runs north and south. The black-topped portion of the highway is 18 to 20 feet wide, and there are wide, grassy shoulders on both sides of the pavement. There were no intersections or driveways near the place where the vehicles collided, and no other vehicles were approaching from either direction when the accident occurred. The speed limit on the highway there was 60 miles per hour. The weather was clear, the road was dry and visibility was good.
Shortly before the accident occurred, plaintiff’s son, who was then 15 years of age, was driving his motorcycle south on Louisiana Highway 754 at a speed of about 35 miles per hour. When he reached a point a little more than two-tenths of a mile from the “T” intersection of that thoroughfare with Louisiana Highway 95 he decided to reduce his speed and to shift his motorcycle into a lower gear. As he was attempting to use his left foot to shift gears, his left shoe came off and fell to the pavement. Immediately after he lost his shoe, young Prudhomme looked quickly over his left shoulder to the rear to locate the shoe, and when he did so he saw the Woodson truck following a very short distance behind him. The truck was straddling the center line of the highway, and it was obvious to Prudhomme that Woodson was entering the northbound lane of traffic for the purpose of overtaking and passing the motorcycle.
Young Prudhomme was aware of the fact that the pick-up truck was behind him before his shoe came off. After glancing to the rear and observing that the truck was engaged in a passing maneuver, Prud-homme nevertheless decided to turn to his left in front of the truck and go to the east shoulder of the highway where he expected to wait until the truck passed before retrieving his shoe. He testified that he gave a left hand turn signal, applied his brakes and “downshifted” his motorcycle into first gear, reduced his speed to about five miles per hour and veered to his left. He stated that he then heard the truck skidding on the pavement, so he changed his mind about turning, and instead he straightened out his motorcycle so that it continued to travel parallel to the center line of the highway. A moment later the motorcycle and the Woodson truck collided, the motorcycle striking the right rear fender of the truck. The operator of the motorcycle was injured in that accident.
Plaintiff’s son insists that he was in the center of the southbound lane of traffic when he lost his shoe. He concedes that at or shortly after he looked back he veered his motorcycle slightly to his left, but he maintains that he did not at any time cross the center line. He takes the position that the motorcycle was in the southbound lane of traffic, about one foot from the center line, when the accident occurred. He contends that Woodson negligently applied the brakes of his truck in such a manner that it caused the truck to skid or slide sideways along the highway to the point where the right rear part of the truck struck the back of the motorcycle.
*40 Woodson testified that he blew his horn and began to enter the passing lane of traffic when he was 70 to 75 feet behind the motorcycle. When he reached a point about 35 or 40 feet behind the smaller vehicle, and before he was completely in the passing lane, he saw young Prudhomme lower his left foot to the pavement and he concluded from that movement that the motorcyclist intended to make a left turn. He stated that prior to that moment there was nothing in the cyclist’s actions which showed that he intended to change his course, and that the lowering of his foot was the first indication that he had that a left turn was anticipated. He testified that he then immediately applied his brakes, turned sharply to his left, and ran off the highway into a drainage ditch in an effort to avoid a collision. Woodson was driving 50 miles per hour as he approached and overtook the motorcycle, and although he skidded when he applied his brakes we are convinced that his truck did not slide sideways at any time.
The evidence shows that the truck left 44 feet of skid marks before it ran off the pavement onto the east shoulder of the highway. Glass and debris were found in the east or northbound lane of traffic, five and one-half feet east of the center line of the highway. The location of the skid marks and the debris, and the position of the vehicles after the accident, convince us that the collision occurred near the center of the northbound or passing lane of traffic.
The trial judge determined that the collision occurred in the northbound lane of traffic, and that it happened while Wood-son was attempting to overtake and pass the motorcycle. He found that young Prudhomme “attempted a left turn with the intent of stopping his motorcycle on the east shoulder of the highway,” and that “it was while executing this maneuver that the collision occurred, the motorcycle striking the right side of the truck.” The evidence supports these findings, and we thus agree with the trial judge in his conclusions as to the facts.
We conclude that plaintiff’s son, James C. Prudhomme, was negligent in attempting to make a sudden left turn on the highway when it was unsafe for him to do so, and that his negligence in that respect was the sole proximate cause of the accident. See Sittig v. Allstate Insurance Company, 216 So.2d 692 (La.App. 3 Cir. 1968).
We are convinced that Woodson was free from negligence. He was driving at a reasonable rate of speed and was maintaining a proper lookout as he overtook the motorcycle. He noticed that young Prudhomme was going to make a left turn immediately after the latter decided to undertake such a maneuver, and as soon as it was reasonably possible for him to do so. Immediately after he became aware of the danger, Woodson did everything he could have done in an effort to avoid a collision. We find m> merit to plaintiff’s argument that Woodson was negligent.
Plaintiff contends, finally, that Woodson had the last clear chance to avoid the accident. He argues that before the collision occurred young Prudhomme gave a left hand turn signal, reduced the speed of his motorcycle and caused it to make a “veering motion,” all of which should have served as adequate notice to Woodson that the boy was going to make a left turn and that he was unaware of his peril. He takes the position that these actions on the part of the boy occurred while Woodson was some distance behind the motorcycle, and that if Woodson had been exercising reasonable care he would have observed the danger in time to have avoided a collision.
We are unable to agree with plaintiff that defendant Woodson discovered, or should have discovered, young Prud-homme’s peril in time to have avoided an accident. The trial judge apparently rejected the testimony which was offered by plaintiff to the effect that a left hand signal was given by plaintiff’s son before *41 the accident occurred, and we cannot say that he erred in reaching that conclusion. Even if such a signal had been given, however, it is apparent that it was given only an instant before the left turn was made, and thus it was not given in time to serve as an effective warning to Wood-son. We have found that Woodson was only 35 to 40 feet behind the motorcycle, and that he was traveling at a speed of 50 miles per hour, when he first could reasonably have determined that the motorcyclist intended to make a left turn. We think Woodson discovered young Prud-homme’s peril as soon as it was possible for him to do so, and that he had no opportunity to avoid the accident after that discovery was made. There is no merit, therefore, to the argument that Woodson had the last clear chance to avoid the accident.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of his appeal are assessed to plaintiff-appellant.
Affirmed.